DECISION AND JUDGMENT ENTRY
{¶ 1} Plaintiff-Appellant Jeffrey Aeh appeals the decision of the Scioto County Court of Common Pleas that granted summary judgment to Defendant-Appellee Madison Township Board of Trustees and Defendant-Appellee Madison Township Senior Center ("Senior Center"). Aeh argues that the trial court erred in granting summary judgment to the Senior Center because a genuine issue of material fact existed, and because the Senior Center was not entitled to judgment as a matter of law. Specifically, Aeh argues that the Senior Center constructed a culvert that directs surface waters onto Aeh's property, that the culvert is unreasonable, and that the surface water runoff is a nuisance to Aeh's tract of land
 {¶ 2} We find Aeh's arguments to be without merit. Accordingly, we affirm the decision of the trial court.
 I. Facts and Proceedings Below {¶ 3} Plaintiff-Appellant Jeffrey Aeh owns and resides on a parcel of real estate which is bordered on the west by State Route 335 and on the south by a strip of land owned by Defendant-Appellees Madison Township Board of Trustees (trustees), which also extends to State Route 335. This strip of land is bordered on the south by two tracts of land: one parcel, adjacent to State Route 335, owned by Mr. Doss; a second parcel, adjacent to Mr. Doss' tract, also owned by the trustees. The Doss tract, the trustee tract, and the strip are elevated above the Aeh tract, and surface water naturally flows from each parcel, through the strip, to Aeh's tract.
 {¶ 4} On February 9, 1996, and March 12, 1996, the trustees entered into a lease agreement with Defendant-Appellee Madison Township Senior Center (Senior Center), whereby the Senior Center leased the property from the trustees for a term of ninety-nine years. The stated purpose of this lease was to allow the Senior Center to construct and operate a nonprofit center to be used by the senior citizens in Madison Township. The lease required the Senior Center to erect a building on the real estate within eight years of the execution of the lease. The lease also provided that if, for any reason, the Senior Center failed to construct a hard-surfaced access driveway from State Route 335 on the strip to the building by the time the building was open for use by the public, the property would revert to the trustees. During 2001, the Senior Center constructed the driveway on the strip of land from State Route 335 to the proposed building site. The elevated driveway runs parallel with the south boundary of Aeh's property. The Senior Center also constructed a culvert, running beneath the driveway toward Aeh's servient tract of land
 {¶ 5} On September 14, 2001, Aeh filed a complaint against both the trustees and the Senior Center that sought an injunction, as well as monetary damages. Aeh alleged that the Senior Center, during construction of the elevated driveway, installed a culvert running underneath the driveway. He also alleged that the surface water is now directed into this single culvert and flows directly onto Aeh's driveway and into his pond, carrying with it sediment and debris. Aeh's complaint further alleged that due to the increase in surface water flow through the culvert, his real property has suffered damage and is susceptible to damage in the future, that he has been deprived of the use and enjoyment of his property, and that his property has depreciated in value.
 {¶ 6} On October 21, 2002, the trustees filed a motion for summary judgment asserting that they were a "landlord out of possession and control," and thus could not be liable for the acts of their lessee. The trustees included the affidavit of Christopher Rase, the president of the board of trustees, who averred that upon execution of the lease between the trustees and the Senior Center, the property was delivered to the Senior Center and to date, the trustees have not been in possession of the property nor have they exercised any control over the property. He also averred that the trustees never occupied any portion of the property, never had the right to admit or exclude persons from the property, and never participated in the excavation or construction of either the driveway or the culvert located on the property.
 {¶ 7} On November 15, 2002, Aeh filed his memorandum contra the trustees' motion for summary judgment and also a motion for summary judgment against both defendants. He argued that the trustees, through the lease, directed the Senior Center to construct the driveway causing damage to his property. Aeh filed an affidavit to support his motion for summary judgment. In that affidavit, Aeh averred that prior to the construction of the roadway by the Senior Center, he experienced no problems with the surface water that flowed from the trustees' property onto his tract of land Aeh also averred that after construction of the driveway by the Senior Center, his driveway is often covered with mud at the point where the culvert diverts surface water onto his property. He further stated that during heavy rains his pond becomes cloudy with sediment, and that he believed that the run-off from the surface water has diminished the value of his real estate.
 {¶ 8} On January 17, 2003, the Senior Center also moved for summary judgment, arguing that Aeh admitted in his deposition that he could not quantify the damage to his property and also that, since construction of the driveway, only "a little bit more water" has been diverted to his property. When asked specifically, since he could not quantify the difference in surface water being diverted to his pond, what this lawsuit was all about, Aeh responded during his deposition that "now the ditch has funneled the water over and into my driveway and it continues making my driveway muddy, and also my pond is muddy at different times when it rains. Also I feel someday it may damage the banks of my pond." Aeh also admitted that prior to the construction of the Senior Center's driveway, he had diverted surface water from Mr. Doss' property to his pond through corrugated pipe. Aeh further testified that he has not obtained any estimates from any source as evidence of the diminution in property value due to the Senior Center's driveway and culvert.
 {¶ 9} On February 28, 2003, the trial court granted summary judgment to both the trustees and the Senior Center. The court found that Aeh, by his own deposition testimony, had not asserted that the amount of water now flowing onto his tract of land is unreasonable. Further, the court found that Aeh had not presented any evidence that he has suffered any damage from the Senior Center's actions nor any evidence that the water flow has increased. Accordingly, the trial court found that there was no genuine issue as to any material fact and that both the trustees and the Senior Center were entitled to judgment as a matter of law.
 II. The Appeal {¶ 10} Aeh timely filed an appeal, assigning the following error for our review.
 {¶ 11} "The Trial court erred in granting summary judgment to the Defendant-Appellees when there was a factual issue as to the material facts regarding Plaintiff-Appellant's claim."
 {¶ 12} In his single assignment of error, Aeh asserts that the trial court should not have granted summary judgment to the Senior Center. Aeh contends that both his deposition testimony and summary judgment affidavit establish the existence of a genuine issue as to whether the Senior Center's redirection of the surface water from their land onto his land by a single culvert was reasonable. Because we find that Aeh has not set forth facts showing that the Senior Center acted unreasonably, we overrule appellant's assignment of error and affirm the judgment of the trial court.
 I. Summary Judgment {¶ 13} Summary judgment is appropriate when there is no genuine issue of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and, construing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. Civ.R. 56(C);Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679,686-687, 653 N.E.2d 1196.
 {¶ 14} We conduct a de novo review of the trial court's decision to grant a motion for summary judgment. Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Thus, we apply the same standard, and review the same evidence, as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 506 N.E.2d 212. Moreover, it is well settled that the party moving for summary judgment bears the burden of showing an absence of genuine issues of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264. The party moving for summary judgment can do so "with or without supporting affidavits." Civ.R. 56(B). If the moving party fails to meet its initial burden, summary judgment motion should be denied. On the other hand, if the moving party demonstrates that summary judgment is appropriate, the burden then shifts to the non-moving party to set forth facts demonstrating that there is a genuine issue of material fact necessitating a trial. See Civ.R. 56(E).
 {¶ 15} The trial court granted both the trustees' and the Senior Center's motions for summary judgment. The trustees' summary judgment motion was based on the argument that they are a "landlord out of possession and out of control." However, the trial court's judgment entry is silent on this issue. Since it is axiomatic that the trial court cannot grant summary judgment to a party that has not moved for summary judgment pursuant to Civ.R. 56, the trustees are deemed to have been granted summary judgment because of the reasons stated in their motion. For our purposes, because Aeh did not address the issues that formed the basis on which the trustees were granted summary judgment, and apparently ignored the grant of summary judgment as to the trustees altogether, we will address only the grant of summary judgment to the Senior Center.
 A. Surface Water Rights {¶ 16} In McGlashan v. Spade Rockledge Terrace Condo Dev.Corp. (1980), 62 Ohio St.2d 55, 402 N.E.2d 1196, the Supreme Court of Ohio announced the rule to apply in surface water disputes between land owners. "In resolving surface water disputes, courts of this state will apply a reasonable-use rule under which a possessor of land is not unqualifiedly privileged to deal with surface water as he pleases, nor absolutely prohibited from interfering in the natural flow of surface waters to the detriment of others. Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, and the possessor incurs liability only when his harmful interference with the flow of surface water is unreasonable."McGlashan at syllabus, quoting Kinyon McClure, Interferences with Surface Waters (1940), 24 Minn.L.Rev. 891, 904. When examining whether an interference is reasonable, courts are guided by the rules outlined in 4 Restatement of the Law 2d, Torts (1965) 108-142, Sections 822-831. McGlashan at 60.
 {¶ 17} In Mays v. Moran (Mar. 18, 1999), Ross App. Nos. 97CA2385, 97CA2386, we stated that "[t]o determine the reasonableness of an invasion, courts must balance the gravity of the harm caused by the interference against the utility [of the] interferer's conduct. 4 Restatement of the Law 2d, Torts (1965), 108-142, Sections 822-831. In particular, courts should balance the foreseeability of the damage to the adjacent landowner's property with the utility of the development of the land and the practicality of providing for adequate drainage before clearing and grading. [McGlashan] at 61. However, fundamentally, the unreasonableness of the invasion is a problem of relative values to be determined by the trier of fact in each case in light of all the circumstances of that case. 4 Restatement of the Law 2d, Torts (1965) 120, Section 826 Comment b."
 {¶ 18} In surface water disputes, the plaintiff bears the burden of proving that the defendant's acts were unreasonable.Montgomery v. Bobka (Dec. 17, 1992) 8th Dist. No. 63814. "Under a rule of reasonableness, determined on a case-by-case basis, the essence of liability is measured by principles of common-law negligence. The pivotal issue is whether a condition on the premises represents a foreseeable and unreasonable risk of harm." Ogle v. Kelly (1993), 90 Ohio App.3d 392, 396,692 N.E.2d 495, citing McGlashan at 61, and Armstrong v.Williamsburg of Cincinnati (July 18, 1990) 1st Dist. No. C-890106.
 {¶ 19} In Chudzinski v. Sylvania (1976),53 Ohio App.2d 151, 372 N.E.2d 611, the Sixth District Court of Appeals listed the factors to consider when determining the "reasonableness" of manipulating the surface water flow on one's property. Quoting from 4 Restatement of the Law 2d, Torts (1965) 120, Section 826, the court stated that "`An intentional invasion of another's interest in the use and enjoyment of land is unreasonable * * * if
 {¶ 20} "`(a) the gravity of the harm outweighs the utility of the actor's conduct, or
 {¶ 21} "`(b) the harm caused by the conduct is substantial and the financial burden of compensating for this and other harms does not render infeasible the continuation of the conduct.'" Id. At 158.
 {¶ 22} To determine the gravity of the harm, the court listed the following factors to consider:
 {¶ 23} "`(a) the extent of the harm involved;
 {¶ 24} "`(b) the character of the harm involved;
 {¶ 25} "`(c) the social value which the law attaches to the type of use or enjoyment invaded;
 {¶ 26} "`(d) the suitability of the particular use or enjoyment invaded to the character of the locality;
 {¶ 27} "`(e) the burden on the person harmed of avoiding the harm.'" Id., quoting sec. 827, Tentative Draft No. 17, page 36.
 {¶ 28} Finally, to determine the utility of the conduct involved, courts are toexamine the following factors:
 {¶ 29} "`(a) the social value which the law attaches to the primary purpose of the conduct;
 {¶ 30} "`(b) the suitability of the conduct to the character of the locality;
 {¶ 31} "`(c) whether it is impracticable to prevent or avoid the invasion, if the activity is maintained;
 {¶ 32} "`(d) whether it is impracticable to maintain the activity if it is required to bear the cost of compensating for the invasion.'" Id., quoting sec. 828, Tentative Draft No. 17, page 41.
 B. Aeh's Claims {¶ 33} In the case sub judice, the following facts are undisputed. The Senior Center leases property that borders Aeh's tract from the trustees. The main parcel is being developed through the erection of a building to be used as a community center for the senior citizens of Scioto County. The strip of land, as the only point of ingress and egress from State Route 335 to the building site, has been developed into an elevated driveway. The Senior Center installed a culvert to direct accumulations of surface water to Aeh's servient tract of land Aeh has been directing the flow of surface water in a similar manner from the Doss tract to his pond through corrugated pipe that he installed. The water being directed through the culvert is "a little bit more" than the runoff Aeh experienced prior to construction and his pond becomes muddy when it rains. In their motion for summary judgment, the Senior Center has not disputed any of the facts that Aeh alleges, thus showing the absence of an issue of material fact. Therefore, the burden shifted to Aeh to set forth additional facts to prove that the Senior Center's construction of the culvert caused harmful interference with the surface waters and was unreasonable.
 {¶ 34} Weighing the gravity of the Aeh's harm against the utility of the Senior Center's acts, we find that the Senior Center has not acted unreasonably. Aeh has not demonstrated any facts, either through his deposition testimony or summary judgment affidavit, suggesting that the Senior Center acted unreasonably by redirecting the surface water through the construction of the culvert. He has not shown, either by his own testimony or by affidavits of experts or neighbors, that the extent and character of his harm has been significant. In fact, he admitted that the harm was not substantial in that the increase in surface water flow through the culvert has been "a little bit more." He claimed that the use and enjoyment of his property has been diminished, but he has not set forth any facts that would support this claim. Nor has Aeh set forth any evidence demonstrating the financial harm imposed on him due to the construction of the culvert.
 {¶ 35} On the other hand, the utility of the Senior Center's acts is evidenced by the social value inherent in the establishment of a community center for the senior-citizen public. The facts show that without the construction of the driveway, the lease would be terminated and the Senior Center would have never been built. Further, the driveway is necessary to provide access to and from the building site to State Route 335. Aeh has not established facts that show the existence of a reasonable alternative location for the driveway. Aeh argues in his brief that the Senior Center "could not have picked a worse location for the installation of the culvert." However, this general statement is not supported by expert testimony or other facts in the record demonstrating that the position of the culvert is unreasonable. Nor has Aeh set forth facts proving the practicality of avoiding or preventing the use of a culvert under the driveway to divert the surface water onto his land Aeh has not set forth any facts suggesting that the culvert is unreasonably placed, that the water runoff after construction of the driveway was unreasonably greater than before, or that it would be impractical to maintain the culvert if the Senior Center is required to bear the cost of compensating him for the surface water runoff. Construing the evidence most strongly his favor, we find that Aeh failed to set forth evidence that the Senior Center acted unreasonably.
 {¶ 36} Appellant asserts that our decision in Mays v. Moran
(Mar. 18, 1999), Ross App. Nos. 97CA2385, 97CA2386, supports his argument that the Senior Center does not have an absolute right to do as it wishes with the surface waters. Appellant contends that since the Senior Center did not provide any evidence indicating what other efforts were considered to avoid shooting of it surface water into Aeh's pond, Mays holds that its conduct is unreasonable as a matter of law. We disagree.
 {¶ 37} In Mays, we were presented with the issue of whether the trial court erred, as a matter of law, in finding that appellant could have found reasonable alternatives to alter his land that would not have resulted in harm to appellee's property. We quoted 4 Restatement on the Law 2d, Torts (1965) 136, Section 830, for the rule that "`An intentional invasion of another's interest in the use and enjoyment of land is unreasonable if the harm is significant and it would be practicable for the actor to avoid the harm in whole or in part, without undue hardship.' * * *. The inquiry is whether the actor could effectively and profitably achieve his main objective so that the harm to others would be substantially reduced or eliminated. * * *. If he could, then his failure to avoid the harm deprives his conduct of the utility it might have otherwise, and the interference is unreasonable as a matter of law." Mays, supra. (Citations omitted.)
 {¶ 38} There are several factors that distinguish our holding in Mays with the case sub judice. First, as the rule states, an intentional invasion of another's interest in land is unreasonable "if the harm is significant * * *." Id. In Mays,
the plaintiff provided substantial evidence that the value of his property dropped by $50,000 due to the defendant's disruption of the flow of surface waters. Aeh's harm in the present case is "a little more" surface water flow and a muddy pond when it rains. He has not presented any financial estimate as to the property damage due to the culvert.
 {¶ 39} Second, the rule requires not only that the harm is significant, but also that it is practical for the defendant to avoid the harm if feasible based on the costs involved. InMays, the plaintiff presented expert testimony that an alternative existed that would have cost less than the $50,000 harm. In the case sub judice, other than conjecture from Aeh, there is no evidence that an alternative exists that would have alleviated the problems Aeh is now experiencing at a cost less than the cost of the harm.
 {¶ 40} Third, the plaintiff in Mays presented evidence that the defendant's disruption in the natural flow of surface waters resulted in flooding on the plaintiff's property two to three feet deep, and that this flooding disrupted the plaintiff's use and enjoyment of their property. While Aeh claims that the Senior Center's culvert has disrupted the use and enjoyment of his property, he has not set forth any facts to support that claim. Also, in Mays, the plaintiff presented expert testimony that the defendant's acts were the cause of the plaintiff's harm. Aeh's sole evidence that the Senior Center's culvert is causing the harm to his property is his own self-serving affidavit. "Generally, a party's unsupported and self-serving assertions, offered by way of affidavit, standing alone and without corroborating materials under Civ.R. 56, will not be sufficient to demonstrate material issues of fact." Bell v. Beightler,
10th Dist. No. 02AP-569, 2003-Ohio-88, at ¶ 33. The reason for this rule is that a party could avoid summary judgment simply by submitting a self-serving affidavit with nothing more than unsupported contradictions of the evidence offered by the moving party. Id.; Kulch v. Structural Fibers, Inc. (1997),78 Ohio St.3d 134, 170, 677 N.E.2d 308 (Cook, J., concurring in part and dissenting in part). Accordingly, Aeh's reliance on Mays is misplaced.
 {¶ 41} Aeh has not set forth facts demonstrating that the Senior Center's acts were unreasonable, and he thereby failed to meet his burden under the summary judgment standard. Because the record demonstrates the absence of a genuine issue of material fact, and because, construing the evidence most strongly in favor of Aeh reasonable minds can come to but one conclusion and that is adverse to Aeh, the Senior Center is entitled to judgment as a matter of law. Aeh's assignment of error is overruled.
 III. Conclusion {¶ 42} Because the record establishes that Aeh failed to set forth facts proving that the Senior Center acted unreasonably in constructing the elevated driveway and culvert, the Senior Center is entitled to judgment as a matter of law. Accordingly, we affirm the decision of the trial court granting summary judgment to the Senior Center and trustees.
Judgment affirmed.
Kline, P.J., and Harsha, J., concur in judgment only.
JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellants costs herein taxed.
This Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Kline, P.J. and Harsha, J.: Concur in Judgment only.