**PINCHOT, Appellant,**

**v.**

**MAHONING COUNTY SHERIFF'S DEPARTMENT, Appellee.**

[Cite as *Pinchot v. Mahoning Cty. Sheriff's Dept.*, 164 Ohio App.3d 718, 2005-Ohio-6593.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 05 MA 48.

Decided Dec. 9, 2005.

Raymond Masek, for Plaintiff–Appellant.

Paul Gains Mahoning, County Prosecuting Attorney, Thomas Michaels, Assistant Prosecuting Attorney, for Defendant–Appellee.

VUKOVICH, Judge.

{¶ 1} Plaintiff-appellant, Robert Pinchot, appeals the Mahoning County Common Pleas Court's grant of summary judgment for defendant-appellee, Mahoning County Sheriff's Department. The issue in this appeal is whether Pinchot established a prima facie case of disability discrimination. Specifically, the issue is whether there exists a genuine issue of material fact as to whether Pinchot was disabled. For the reasons stated below, the judgment of the trial court is affirmed.

## STATEMENT OF CASE AND FACTS

{¶ 2} Pinchot worked for the Mahoning County Sheriff's Department as a correctional deputy and was assigned to the Corrections Division of the Mahoning County Jail. In February 1997, Pinchot sought the services of Comprehensive Psychiatry Specialists as the result of his inability to deal with the stress of his employment. Near the end of February, Pinchot was diagnosed with posttraumatic stress disorder ("PTSD").

{¶ 3} Because of the diagnosis, Pinchot did not work from February 21, 1997, to March 8, 1997. Pinchot returned to work on March 11, 1997, and continued to work until April 2, 1997. As a result of an on-duty incident unrelated to his diagnosis of PTSD, Pinchot was off work from April 3, 1997, through September

2, 1997. Pinchot then returned to work and continuously worked until November 4, 1997, when he was notified that he was being placed on administrative leave with pay because of an incident that occurred on October 25, 1997 (unrelated to PTSD). On December 24, 1997, Pinchot received a letter from the Mahoning County Sheriff's Department notifying him of a predisciplinary conference scheduled for January 14, 1998.

{¶ 4} On January 14, 1998, Pinchot gave the Mahoning County Sheriff's Department a resignation letter. The stated reasons for the resignation were "due to obtaining other employment and in anticipation of upcoming lay-offs within the Sheriff's Department."

{¶ 5} On September 8, 2003, Pinchot filed a complaint against the Mahoning County Sheriff's Department alleging disability discrimination, wrongful discharge in violation of a clear public policy, and invasion of privacy. On November 18, 2003, the Mahoning County Sheriff's Department filed a motion to dismiss because it lacks the capacity to be sued. On December 3, 2003, Pinchot filed both a response to the motion to dismiss and a motion for leave to file an amended complaint. On December 19, 2003, the trial court granted Pinchot leave to file the amended complaint. The amended complaint was filed that same day. The only difference between the amended complaint and the original complaint is that Mahoning County was named as defendant instead of the Mahoning County Sheriff's Department.

{¶ 6} After Pinchot's deposition was taken and discovery was completed, Mahoning County filed a motion for summary judgment alleging that there were no genuine issues of material fact and that it was entitled to judgment as a matter law on all causes of action. Pinchot filed a motion in opposition to the motion for summary judgment. Thereafter, the trial court granted Mahoning County's motion for summary judgment on all causes of action. Pinchot timely appeals from that order.

## ASSIGNMENT OF ERROR

{¶ 7} "The trial court erred to the prejudice of appellant in granting appellee's motion for summary judgment with the mere statement unsupported by any analysis or reasoning that 'plaintiff has failed to make a prima facie case of disability.'"

{¶ 8} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 24. Summary judgment is properly granted when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable

minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; Civ.R. 56(C).

{¶ 9} This appeal deals solely with the trial court's grant of summary judgment for Mahoning County on Pinchot's claim of disability discrimination. Therefore, the grant of summary judgment on the remaining two claims is not addressed.

{¶ 10} Pinchot's claim for disability discrimination was brought under R.C. Chapter 4112. To establish a prima facie case of disability discrimination under R.C. Chapter 4112, an employee must demonstrate (1) that he was disabled, (2) that the employer took an adverse employment action against the employee, at least in part, because the employee was disabled, and (3) that the employee could safely and substantially perform the essential functions of the job in question despite his or her disability. *Hood v. Diamond Prods., Inc.* (1996), 74 Ohio St.3d 298, 658 N.E.2d 738.

{¶ 11} The issue raised is whether Pinchot presented evidence that established that a genuine issue of material fact existed as to whether he was disabled—the first prong of the aforementioned prima facie test. Pinchot claims to suffer from PTSD.

{¶ 12} Under R.C. 4112.01(A)(13), "disability" is defined as a "physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment."

{¶ 13} In determining what constitutes a disability under this definition, it is appropriate to look to federal law for guidance, i.e., to the Americans with Disabilities Act ("ADA"). *Columbus Civ. Serv. Comm. v. McGlone* (1998), 82 Ohio St.3d 569, 573, 697 N.E.2d 204; *Maracz v. United Parcel Serv., Inc.*, 8th Dist. No. 83432, 2004-Ohio-6851, 2004 WL 2914994 ("Ohio's statute was modeled after the federal Americans with Disabilities Act ('ADA') and therefore, we look to the ADA and its interpretation by federal courts for guidance in interpreting the Ohio statute").

{¶ 14} It has been held that PTSD with impairment, standing alone, is not necessarily a disability contemplated by the ADA. *Hamilton v. Southwestern Bell Tel. Co.* (C.A.5 1998), 136 F.3d 1047. However, it can be considered a disability if it meets the definition provided in the statute. That is, it can be

considered a disability if the impairment substantially limits one or more major life activities.

{¶ 15} The United States Supreme Court, in *Toyota Motor Mfg., Kentucky, Inc. v. Williams* (2002), 534 U.S. 184, 196–199, 122 S.Ct. 681, 151 L.Ed.2d 615, explained that the phrase "substantially limits" means "considerable" or "to a large degree." Id. at 196, 122 S.Ct. 681, 151 L.Ed.2d 615. It also explained that the word "major" in the phrase "major life activities" means "important." Id. at 197, 122 S.Ct. 681, 151 L.Ed.2d 615. It further clarified:

{¶ 16} " 'Major life activities' thus refers to those activities that are of central importance to daily life. In order for performing manual tasks to fit into this category—a category that includes such basic abilities as walking, seeing, and hearing—the manual tasks in question must be central to daily life. If each of the tasks included in the major life activity of performing manual tasks does not independently qualify as a major life activity, then together they must do so.

{¶ 17} " * * *

{¶ 18} "We therefore hold that to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." Id. at 197–198, 122 S.Ct. 681, 151 L.Ed.2d 615.

{¶ 19} Accordingly, given these definitions, it must be determined whether the record shows that Pinchot's PTSD caused him to be disabled. Pinchot was deposed during discovery, and at his deposition, he was asked questions about "major life activities." He was asked whether in 1997, when he was diagnosed with PTSD, he was able to care for himself, perform manual tasks and walk, jog, and run. He answered all of these questions in the affirmative. He was then asked whether he could see, hear, and speak. Once again, he answered the questions in the affirmative. Lastly, he was asked whether, at the time of the diagnosis, he was able to work. Again, he answered the question affirmatively. Furthermore, Pinchot acknowledged at his deposition that he saw a doctor only for one or two hours before this PTSD diagnosis was made and that he has never returned to that doctor or any healthcare facility for any further treatment or diagnosis concerning PTSD.

{¶ 20} Considering the aforementioned definition of disability and major life activities, the deposition creates no genuine issue of material fact. Pinchot admitted that he could care for himself, perform manual tasks, walk, jog, run, hear, speak, see, and work. All of these activities are major life activities. Thus, this testimony does not create a genuine issue of material fact as to whether

Pinchot was disabled. Rather, from this evidence alone, it appears that Pinchot is not disabled as defined under R.C. Chapter 4112 and the ADA.

{¶ 21} That said, in an affidavit attached to his motion in opposition to Mahoning County's motion for summary judgment, Pinchot asserts some factors that he asserts are evidence that he is disabled as defined under R.C. Chapter 4112 and the ADA. He states:

{¶ 22} "To this day I still can't handle stress as other people. I had to miss work-time at the [Mahoning County Sheriff's Department] because of it. Even to this day, if I have several projects around the house going, it just eats at me. Socially, just being out with friends, I'm not like I used to be. The anxiety and stress just builds up in me and I have suffered marital problems as a result."

{¶ 23} Thus, this affidavit in some aspects contradicts his deposition testimony. At the deposition, he stated that he could still work. His affidavit claims that the PTSD caused him to miss work. Likewise, at the deposition he stated that he could perform manual tasks; however, in the affidavit he states that having several projects around the house eats at him. As such, this affidavit qualifies as a self-serving affidavit.

{¶ 24} The Fourth Appellate District has explained that self-serving affidavits made by the nonmoving party normally cannot be used to survive summary judgment. *Steiner v. Steiner* (July 12, 1995), 4th Dist. No. 93 CA 2191, 1995 WL 416941. It stated:

{¶ 25} "Generally, a nonmoving party cannot defeat a motion for summary judgment by submitting an affidavit which, without good explanation, contradicts that party's previous deposition testimony. See *Crosswhite v. Desai* (1989), 64 Ohio App.3d 170, 580 N.E.2d 1119; *Brannon v. Rinzler* (1991), 77 Ohio App.3d 749, 603 N.E.2d 1049; *Pain Ents. v. Wessling* (Mar. 22, 1995), 1st Dist. No. C–930888, 1995 WL 121459; *McCain v. Cormell* (June 30, 1994), 11th Dist. No. 93T–4967, 1994 WL 320915; *Bellian v. Bicron Corp.* (Dec. 18, 1992), 11th Dist. No. 92–G–1695, 1992 WL 387354; *Gagne v. Northwestern Natl. Ins. Cô.* (C.A.6, 1989), 881 F.2d 309, 315." Id. See, also, *Aeh v. Madison Twp. Trustees*, 4th Dist. No. 03 CA 2885, 2004-Ohio-2181, 2004 WL 912649; *Davis v. Cleveland*, 8th Dist. No. 83665, 2004-Ohio-6621, 2004 WL 2829027; *Belknap v. Vigorito*, 11th Dist. No. 2003–T–0147, 2004-Ohio-7232, 2004 WL 3090214.

{¶ 26} It has been explained that the reason for this rule is that to hold otherwise would allow a party to avoid summary judgment simply by submitting a self-serving affidavit with nothing more than unsupported contradictions of the evidence offered by the moving party. *Aeh*, 2004-Ohio-2181; *Davis*, 2004-Ohio-6621; *Belknap*, 2004-Ohio-7232.

{¶ 27} We find this reasoning logical. Thus, the part of Pinchot's affidavit that contradicts his prior deposition testimony will not be considered as evidence.

{¶ 28} Therefore, the only remaining allegation in the affidavit that could offer evidence of a disability is his claim that he cannot socialize the same way he did before he was inflicted with PTSD.

{¶ 29} The First Circuit Court of Appeals has found that socializing is not a major life activity and thus that an inability to socialize is not evidence of a disability. *Soileau v. Guilford of Maine, Inc.* (C.A.1 1997), 105 F.3d 12, 15. But, see, *McAlindin v. Cty. of San Diego* (C.A.9 1999), 192 F.3d 1226 (the only federal circuit to find that interacting with others is a major life activity). See, also, *Rohan v. Networks Presentations, L.L.C.* (C.A.4 2004), 375 F.3d 266 (stating that only the Ninth Federal Circuit has recognized the inability to socialize as a disability). The First Circuit has explained that the concept of interacting with others is remarkably elastic, perhaps so much so as to make it unworkable as a definition. *Soileau,* 105 F.3d at 15. "While [getting along with others] is a skill to be prized, it is different in kind from breathing or walking, two exemplars which are used in the regulations. Further, whether a person has such an ability may be a matter of subjective judgment; and the ability may or may not exist depending on context * * *. To impose legally enforceable duties on an employer based on such an amorphous concept would be problematic." *Rohan,* 375 F.3d 266, citing *Soileau,* 105 F.3d at 15.

{¶ 30} We find the First Circuit's reasoning to be persuasive. Accordingly, the inability to socialize as one was once able is not evidence of a disability.

{¶ 31} Consequently, Pinchot's affidavit offers no evidence of a disability. Thus, only his deposition testimony can be considered to determine whether there is a genuine issue of material fact as to his being disabled.

{¶ 32} As aforementioned, the deposition testimony establishes that he can perform numerous tasks that are major life activities. His ability to perform those tasks and his inability to show that he is unable to perform other major life activities causes his claim to fail. Thus, there is no genuine issue of material fact.

{¶ 33} In conclusion, given the evidence presented, Pinchot's PTSD does not constitute a disability under R.C. Chapter 4112 and the ADA. Accordingly, there is no genuine issue of material fact.

{¶ 34} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Judgment affirmed.

DONOFRIO, P.J., and WAITE, J., concur.