# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

JOHN M. MERINO, et al.,

Plaintiffs-Appellants,

v.

LEVINE OIL ENTERPRISES, LLC, et al.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 17 CO 0030**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2016 CV 381

**BEFORE:**
Kathleen Bartlett, Gene Donofrio, Carol Ann Robb, Judges.

---

**JUDGMENT:**
AFFIRMED

---

*Attys. Robert Tscholl and James Mathews*, 400 South Main Street, North Canton, Ohio 44720, for Appellants and

*Attys. Bruce Smith and Brent Barnes*, 1844 West State Street, Suite A, Alliance, Ohio 44601, for Appellees.

Dated: January 18, 2019

**BARTLETT, J.**

{¶1} Plaintiffs-Appellants, John M. Merino and Kathy L. Merino, appeal the decision of the Columbiana County Common Pleas Court granting summary judgment in favor of Defendant-Appellee, Levine Oil Enterprises, LLC. On appeal, Appellants argue that the trial court erred in granting summary judgment in favor of Defendant-Appellee, where the trial court's judgment failed to declare the rights and legal relations of the parties, and that genuine issues of fact precluded the entry of summary judgment.

{¶2} For the following reasons, Appellants' first and second assignments of error are without merit. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶3} Appellants filed the instant case as a declaratory judgment action on July 22, 2016, alleging three counts of breach of lease/declaratory judgment, and one count to quiet title.

{¶4} Appellants filed the action against Levine Oil Enterprises, LLC ("Appellee") and Sierra Buckeye, LLC. The claim against Sierra Buckeye, LLC was based upon an assignment that had occurred during the term of the lease, but based upon the subsequent reassignment of those rights back to Appellee, Sierra was voluntarily dismissed from the lawsuit.

{¶5} It is undisputed that the parties entered into the 2010 Lease and subsequent ratification of said Lease in 2012.

{¶6} Paragraph 1 of the 2010 lease reads as follows:

That the Lessor * * * for the purpose of drilling, operation for, producing and the covenants and agreements hereinafter contained, does hereby lease exclusively unto the Lessee, for the purpose of drilling, operation for, producing and removing oil and gas and all the constituents thereof, and of injecting air, gas, brine and other substances from any sources and into any subsurface strata, other than potable water strata and workable coal strata, (including but not limited to the right to inject any wells on the leasehold property and to otherwise conduct all such secondary or tertiary

Case No. 17 CO 0030

operations as may be required in the opinion of the Lessee,) and to transport by pipelines or otherwise across and through said lands oil, gas and other constituents from the subject lands * * * .  (2010 Lease at ¶ 1).

**{¶7}**  Paragraph 24 of the 2010 lease reads as follows:

It is agreed upon that we will not travel through the land to transport gas unless a well is drilled first on the leased land.  It is also agreed upon that we will not inject the land.  A separate deal in the future is possible if injection for disposal of wells is needed.  The lessee has the right to purchase the well at salvage value if lessor chooses to abandon it in the future.  (2010 Lease at ¶ 24).

**{¶8}**  Appellants argue that paragraph 24 modified paragraph 1 of the lease.

**{¶9}**  The 2010 lease, as well as the 2012 ratification restate the same language for paragraphs 1 and 24.  In fact, Appellant had previously executed a lease in 2004 with Vanguard which contained the same provisions in paragraphs 1 and 24 as in the 2010 and 2012 documents.

**{¶10}** It is undisputed that as part of the drilling and completion process for the well on Appellants' property in 2012, Appellee hydraulically fractured the producing rock formation in order to stimulate production of oil and gas.

**{¶11}** Appellants claim the hydraulic fracturing constituted a violation of paragraph 24 of the Levine lease and as a result the court should declare the lease terminated.  (Levine Response to MSJ, at 7).

**{¶12}** Appellee states that hydraulic fracturing during the completion of a well and injecting a well for disposal of oilfield wastes are totally disparate procedures and hence paragraphs 1 and 24 apply to separate procedures.  (Levine MSJ at 8, citing Greg New Affidavit, Ex. F).

**{¶13}** On June 22, 2017, Appellee filed a Motion for Summary Judgment alleging that no genuine issue of material fact existed and that Appellee was entitled to judgment, and attached the following in support:  the July 19, 2010 lease; the March 22, 2012 Ratification of Oil & Gas Lease; the September 6, 2012 partial assignment

between Levine and Sierra Buckeye LLC; Affidavit of Shari Rose notifying Appellee that Sierra intended to assign back the lease interest; portions of the deposition transcript of Heather Pittman and Affidavit of Heather Pittman; Affidavit of Greg New, petroleum engineer; and Affidavit of Russell Miller.

{¶14} The affidavit of Greg New, an independent petroleum engineer, stated that the "hydraulic fracturing process is a part of the well drilling and completion procedure and involves pumping under pressure large amounts of water and sand and a very small amount of chemicals into a rock formation. . . ." (New Affidavit at ¶ 6). The New Affidavit further states that "injection of disposal wells is a different procedure whereby brine and other well effluents from many other locations are transported to and injected into a well. . . ." (New Affidavit at ¶ 8).

{¶15} The deposition transcript of Heather Pittman was filed with the trial court, and was relied upon by both parties. The affidavit of Ms. Pittman was also submitted in support of Appellee's summary judgment motion. Ms. Pittman discussed the inclusion of paragraph 24 in the subject lease, stating "that pertained to discussing disposal wells, the water disposal wells, as Mr. Merino stated he did not want a water disposal well on his property. And we were okay with including that because we are not in the business of putting in disposal wells." (Pittman Depo. Trans. at 15-16). Ms. Pittman stated "it's my understanding this whole paragraph [24] was – pertains to the disposal wells." (Pittman Depo. Trans. at 16). Ms. Pittman responded to the following regarding injecting on the property:

Q. Did Mr. Merino ever tell you that he did not want any form of liquids injected into the land in the drilling process?

A. No. He was only – did not want a disposal well. We had conversations about getting a well drilled. He wanted to be higher on our list because he had several leases in process because he wanted to get a well in production. (Pittman Depo. Trans. at 36).

{¶16} Ms. Pittman further stated that "Mr. Merino made it very clear in the lease negotiations that he did not want brine or other waste products from other lands brought

to his land for injection and disposal purposes, and to alleviate those concerns, paragraph 24 was included in the lease. (Pittman Affidavit at ¶¶ 3-4). Ms. Pittman further testified that the recorded version of the lease was "the final copy that they signed." (Pittman Depo. Trans. at 60).

{¶17} The Affidavit of Russell Miller attested that he served as the manager of field operations for Appellee. During the drilling and completion operation, Mr. Merino "appeared at the well site on several occasions questioned me concerning when the well would be completed and placed into production." (Miller Affidavit at ¶ 3). Mr. Miller "indicated to Mr. Merino that I was awaiting the arrival of the fracking contractor for the purpose of fracking the well formation and that this was a condition precedent to the well being placed into production" and further that Mr. Merino did not object to the fracking procedure. (Miller Affidavit at ¶ 4-5).

{¶18} The term "fracking" is defined as "the injection of fluid into shale beds at high pressure in order to free up petroleum resources (such as oil or natural gas)." https://www.merriam-webster.com/dictionary/fracking.

{¶19} On July 10, 2017, Appellants filed their Memorandum in Opposition to Appellee's Motion for Summary Judgment, and tendered the Affidavit of John M. Merino. Appellants also cited to certain pleadings and the deposition transcript of Heather Pittman that was filed with the trial court. The Merino Affidavit alleged that Paragraph 24 of the subject lease, which was also included in a prior 2004 lease that had expired, was "included to prohibit any injection of fluids into my property, for whatever reason." (Merino Affidavit at ¶ 4). Mr. Merino further alleges that he "intended, and agreed, for any well drilled on my property to be drilled and placed into production with stimulation of the well with explosives." (Merino Affidavit at ¶ 5). Mr. Merino further alleges that the lease form that was actually recorded was not the version that had been negotiated between the parties, and that the language in paragraph 1 regarding "injecting" had been deleted from the signed version of the lease. (Merino Affidavit at ¶ 6-7).

{¶20} Appellants cited the Pittman Deposition Transcript in support of their claims, noting that paragraph 24 was specifically negotiated by the parties to be included in the Lease, Ms. Pittman was the notary for the executed Lease, and that the

subject well was fracked using an air/fluid rotary technique. (Pittman Depo. Trans. at 15, 17-18, 56).

**{¶21}** No reply brief was filed on behalf of Appellee.

**{¶22}** On July 27, 2017, the trial court summarily granted Appellee's Motion for Summary Judgment, stating that there were no genuine issues of material fact and invited counsel for Appellee to submit a Judgment Entry granting Levine's Motion for Summary Judgment. (Announcement of Decision at 3).

**{¶23}** On August 8, 2017, the trial court's judgment entry was filed, stating "upon consideration of said motion and Plaintiffs' response, together with the pleadings, deposition transcripts, and affidavits filed herein, it is the Court's finding that Levine Oil Enterprises, LLC's Motion for Summary Judgment is well taken; that there is no genuine issue of material fact, and said Defendant is entitled to summary judgment as a matter of law."

**{¶24}** Appellants filed their timely appeal.

**First Assignment of Error**

The trial court erred as a matter of law when it merely granted summary judgment in this declaratory judgment action without adequately or fully addressing all issues and without adequately or fully declaring Appellants' rights and legal relations vis-à-vis Appellee, to Appellants' prejudice.

**{¶25}** The instant case was titled a "Complaint" before the trial court, and noted as a declaratory judgment action in the case cover sheet filed with the Clerk of Court's office. When entering judgment in a properly filed declaratory action, the court is to affirmatively or negatively declare the rights of the parties. *John Fithian Contracting Co. v. City of Salem,* 7th Dist. No. 07 CO 33, 2008-Ohio-5055, ¶12; see R.C. 2721.02(A). The Appellants' Complaint did not cite to the Declaratory Judgment Act. The only reference to a "declaratory judgment" type of action are Appellants' titles in Counts 1, 2 and 3 that were for "Breach of Lease/Declaratory Judgment", and the allegations that "Plaintiffs aver that a real and justiciable controversy exists between the Parties regarding the validity of the Levine Lease, requiring this Court's prompt resolution and declaration of the Parties' respective rights and legal relations." (Complaint at ¶ 20, 24,

29). Appellants requested the court to "declare and determine that the Lease was terminated when Levine violated Provision 24 of the Levine Lease" (Count I); "declare and determine that the Lease was terminated based upon an improper assignment pursuant to Paragraph 13" (Count 2); and finally that the Lease should be "terminated due to the failure to make royalty and/or other payments under the Lease for a period of approximately fourteen months" (Count 3). (See Complaint at ¶ 21, 25, 28). It is clear from reading the Complaint that Appellants' claims sounded in breach of lease, despite the filing classification as a declaratory judgment action. Appellants requested the trial court to terminate the Lease at issue based upon various alleged breaches. Appellants argued that the alleged breaches resulted in a termination of the Lease, such that the court should then provide a declaration of the respective rights and legal relations of the parties.

{¶26} Appellants cite various cases in support of the general proposition that "a court fails to fulfill its function in a declaratory judgment action when it disposes of the issues by journalizing an entry merely sustaining or overruling a motion for summary judgment without setting forth any construction of the document or law under consideration." *Grange Mut. Cas. Co. v. Jordan,* 3rd Dist. No. 5-90-46, 1991 WL 229218, *3, citing *Waldeck v. North College Hill,* 24 Ohio App.3d 189, 190 (1985). In *Grange,* the dispute centered upon the interpretation of an insurance policy, specifically the terms establishing the limits of coverage available for payment of the claims of the insureds individually and collectively. *Id.* at *1. Construing the terms of the policy in that case would be similar to the instant case had the Appellants filed the current action before there was any "fracking" of the well. Appellants did not do that, but rather waited for several years after the fracking had occurred, the well began producing, and Appellants had been collecting royalties before filing the instant action. The current dispute is whether the lease provisions have been breached rather than how they should be interpreted.

{¶27} Appellee emphasizes that it only moved for summary judgment on the "breach of lease" portions of Appellant's Complaint and since the trial court granted summary judgment in its favor, it must be that the trial court did not find that the underlying lease was breached. Appellee cites *Toledo v. Toledo Edison Co.*, 118 Ohio

Misc.2d 144, 2001-Ohio-4358, 770 N.E.2d 142, ¶12, for the proposition that a declaratory judgment action must be based on an actual controversy, and the court will not issue an advisory opinion or one that answers a moot or abstract question. Here, since the trial court granted summary judgment in favor of Appellee, it essentially upheld the provisions of the lease in Appellee's favor, resolving the underlying controversy, and thereby rendering any declaratory judgment action moot.

**{¶28}** We do not find merit in Appellants' first assignment of error since the case clearly centered on whether the lease provisions had been breached. The trial court found that there was no breach of the lease provisions, essentially upholding the terms of the lease agreement, rather than terminating the lease as Appellants had requested. As a result, it was not necessary to issue a declaration of the rights, status, and other legal relations of the parties. *See* R.C. 2721.02(A).

### Second Assignment of Error

The trial court erred in its entry of summary judgment, because genuine issues of material fact existed for resolution through trial, and the Appellee was not entitled to judgment as a matter of law, to Appellants' prejudice.

**{¶29}** We review the trial court's entry of summary judgment under a *de* novo standard of review. *Bohlen v. Anadarko E & P Onshore, L.L.C.,* 150 Ohio St.3d 197, 2017-Ohio-4025, 80 N.E.3d 468, ¶10, citing *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Viewing the facts in a light most favorable to the non-moving party, the trial court must find that: (1) no genuine issue of material fact remains for litigation; (2) the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, which is adverse to the non-moving party. *Bentley v. Beck Energy Corp.,* 7th Dist. Nos. 13 BE 33, 13 BE 34, 2015-Ohio-1375, ¶ 12, citing *Campbell Oil Co. v. Shepperson,* 7th Dist. No. 05 CA 817, 2006-Ohio-1763, ¶ 8. The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show that there is a

genuine issue of material fact. *Id.*; Civ.R. 56(E).

**{¶30}** The rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument. *Kramer v. PAV Drilling Oil & Gas L.L.C.* 197 Ohio App.3d 554, 2011-Ohio-6750, 968 N.E.2d 64, ¶ 10 (9th Dist.), citing *Harris v. Ohio Oil Co.,* 57 Ohio St. 118, 129, 48 N.E. 502 (1897). There is also a rule of construction that "when possible, a court's construction of a contract should attempt to harmonize all the provisions of the document rather than to produce conflict in them." *Love v. Beck Energy Corp.,* 7th Dist. No. 14 NO 415, 2015-Ohio-1283, ¶ 22, citing *Pierce Point Cinema 10, L.L.C. v. Perin–Tyler Family Found., L.L.C.,* 12th Dist. No. CA2012–02–014, 2012-Ohio-5008, ¶ 11, citing *Farmers' Natl. Bank v. Delaware Ins. Co.,* 83 Ohio St. 309, 337, 94 N.E. 834 (1911).

**{¶31}** The issues in the present case are based upon paragraphs 1 and 24 in the lease. Appellee argues that the paragraphs are clear and unambiguous, serve two separate purposes, and if the court finds that ambiguity exists among the paragraphs, extrinsic evidence warrants a finding in Appellee's favor. Appellant argues that paragraph 24 was clear and unambiguous, and that the language in paragraph 1 was subject to and eliminated by the wording of paragraph 24, upon the premise that a specific contract provision controls over a general one. *Hoepker v. Zurich Am. Ins. Co.,* 3rd Dist. No. 14-03-18, 2003-Ohio-5138, ¶ 11. It is important to note that in Appellant's complaint, there were no issues raised with regard to paragraph 1 of the lease. Moreover, not until Appellee filed for summary judgment, raising the authority granted in paragraph 1 for Appellee to enter upon the lands for purposes of removing oil and gas from the property, did Appellant assert in opposition to that argument that the language of paragraph 1 was insignificant because it was "subject to and eliminated by the wording of paragraph 24." Appellant further asserted in the Merino Affidavit that the portion of paragraph 1 that included language about "injecting" the property was removed from the version of the lease that they had signed, but does not submit any corroborating evidence in support of that claim.

**{¶32}** This court cannot agree with Appellants' strained interpretation. Paragraphs 1 and 24 of the lease were consistent among the leases that Appellants had executed dating back to 2004. If it was the intention of the parties to restrict

Appellee's ability to stimulate the well with hydraulic fracturing, then express language could have been included to that effect in paragraph 1 which pertains to Appellee's ability to enter the property to drill the well. Appellant claims that he intended for the well to be stimulated with the use of explosives, yet there is absolutely no language pertaining to the use of explosives in the lease agreement.

{¶33} Appellee cites *Karabin v. State Auto Mut. Ins. Co.,* 10 Ohio St.3d 163, 167, 462 N.E.2d 403 (1984) for the proposition that a contract's meaning is to be gathered from consideration of all its parts, and no provision is to be wholly disregarded as inconsistent with other provisions unless no other reasonable construction is possible. That case further states that "a special provision will be held to override a general provision only where the two cannot stand together. If reasonable effect can be given to both, each is to be retained." *Id.,* citing *German Fire Ins. Co. v. Roost,* 55 Ohio St. 581, 45 N.E. 1097 (1897), paragraphs one and two of the syllabus. Here, paragraph 1 permits "injecting air, gas, brine and other substances" for the purpose of "drilling, operation for, producing and removing oil and gas and all the constituents thereof." (Lease at ¶ 1). At the end of the Lease, paragraph 24 states that "[i]t is also agreed upon that we will not inject the land. A separate deal in the future is possible if injection for disposal of wells is needed." (Lease at ¶ 24). In accordance with *Karabin,* the two provisions can be read to refer to the injection for purposes of removing the oil, gas and all constituents in paragraph 1, and injection for the purposes of disposal wells in paragraph 24. Appellants argue that paragraph 24 should be read as prohibiting injection without any restrictions. However, Appellants allowed paragraph 1 to remain in the lease, which specifically addresses injection that is permitted for purposes of removing oil, gas and other constituents. Appellants' argument that paragraph 1 was not contained in the version of the lease that they signed is not convincing where no other evidence was presented to demonstrate that there was another version of the lease presented to Appellants. Additionally, the same language set forth in paragraph 1 of the lease in question, was present in the lease that Appellants had previously signed in 2004.

{¶34} Appellee relied upon the affidavit of Greg New, an independent petroleum engineer who noted the differences between injecting as part of the "hydraulic fracturing

process" compared to "injection of disposal wells." (New Affidavit at ¶ 6, 8). Paragraph 1 of the lease does not specify "hydraulic fracturing", but it does reference the injecting for purposes of removal of the oil, gas, and all the constituents. Appellant John Merino stated in his Affidavit that he believed explosives would be used to stimulate the well on his property. (Merino Affidavit at ¶ 5). However, it is clear from reading the Lease agreement that there is no reference to the use of explosives. Further, both parties relied upon the testimony of Heather Pittman, which emphasized the addition of paragraph 24 in the lease as a result of Mr. Merino's concerns that "he did not want a water disposal well on his property." (Pittman Depo. Trans. at 15-17; Pittman Affidavit at ¶ 3-4). There was no testimony that Mr. Merino was opposed to hydraulic fracturing to prepare the well. To the contrary, evidence was submitted that revealed Mr. Merino was present at the well site prior to the fracking of the well, and that he was informed that Levine was waiting for the fracking contractor for the purpose of fracking the well formation. (Miller Affidavit at ¶ 4). The manager of field operations testified that Mr. Merino did not register an objection to the fracking procedure. (Miller Affidavit at ¶ 5).

{¶35} In response to Appellee's Motion for Summary Judgment, Appellants tendered the Affidavit of John M. Merino, cited to portions of the Heather Pittman deposition transcript, and cited to the pleadings filed in the case. In his Affidavit, Mr. Merino alleged that Paragraph 24 of the subject lease, which was also included in a prior 2004 lease that had expired, was "included to prohibit any injection of fluids into my property, for whatever reason." (Merino Affidavit at ¶ 4). Mr. Merino further alleges that he "intended, and agreed, for any well drilled on my property to be drilled and placed into production with stimulation of the well with explosives." (Merino Affidavit at ¶ 5). Mr. Merino further alleges that the lease form that was actually recorded was not the version that had been negotiated between the parties, and that the language in paragraph 1 regarding "injecting" had been deleted from the signed version of the lease. (Merino Affidavit at ¶ 6-7). It is clear to this court that the Merino affidavit is a self-serving affidavit without any corroborating evidence. Appellants did not produce copies of the alleged other versions of the lease that they purported to sign. Moreover, Appellants do not point to any provisions in the lease which refer to the use of explosives on the property. Rather, paragraph 1 specifically permits Appellees to use

injecting procedures for purposes of removing gas, oil and other constituents, and is the same provision used in the 2004 lease that Appellants had entered into with another company.

**{¶36}** A nonmoving party may not avoid summary judgment by merely submitting a self-serving affidavit contradicting the evidence offered by the moving party. *Greaney v. Ohio Turnpike Com'n,* 11th Dist. No. 2005-P-0012, 2005-Ohio-5284, ¶ 16, citing *Belknap v. Vigorito,* 11th Dist. No. 2003-T-0147, 2004-Ohio-7232, ¶ 27. To hold otherwise would allow a party to avoid summary judgment simply by submitting a self-serving affidavit with nothing more than unsupported contradictions of the evidence offered by the moving party. *Pinchot v. Mahoning Cty. Sheriff's Dept.,* 164 Ohio App.3d 718, 2005-Ohio-6593, 843 N.E.2d 1238, ¶ 26 (7th Dist.). A self-serving affidavit that is not corroborated by any evidence is insufficient to establish the existence of an issue of material fact. *Bank of New York Mellon v. Bobo,* 2015-Ohio-4601, 50 N.E.3d 229, ¶ 13, (4th Dist.) citing *Wells Fargo Bank v. Blough,* 4th Dist. No. 08 CA 49, 2009-Ohio-3672, ¶ 18. In *Bobo,* the appellants alleged via affidavit in opposition to the motion for summary judgment in that case, that the promissory note and mortgage did not contain their authentic signatures. *Id.* at ¶ 14. The court noted that the appellants failed to attach to their affidavits any of the copies that they claimed to compare to the alleged originals inspected. *Id.* The *Bobo* Court relied on *Fifth Third Bank v. Jones-Williams,* 10th Dist., No. 04AP-935, 2005-Ohio-4070, ¶ 28-29, which also involved allegations of false signatures, where that court noted that the appellants did not satisfy their reciprocal burden as the nonmoving party to identify evidence to demonstrate that any genuine issue of material fact regarding the validity of their signatures must be preserved for trial. The affidavits in that case similarly included allegations of false signatures, but no other evidence in support of those statements. Here, the Appellants solely rely on an Affidavit that alleges that other versions of the lease had been signed than what was filed, but have not presented any evidence to corroborate those claims. As a result, Appellants have not met their burden to identify evidence to demonstrate that any genuine issue of material fact regarding the lease exists.

**{¶37}** Appellants also raised two additional issues which they argue supports a forfeiture or termination of the underlying lease in this case: a gap in royalty payments

Case No. 17 CO 0030

and the permit that was obtained to commence the well on Appellants' property. Based upon the evidence submitted in support of the summary judgment motion, it is clear that when Appellants advised Appellee of an error in the royalty payments, Appellee took corrective action as required by paragraph 17 of the lease. Appellee advised Appellants of a software malfunction that caused the gap in payments and sent the outstanding royalty payments within a thirty day period. Further, this court reviewed the deposition testimony of Heather Pittman which explained the permit process with the involved companies, which testimony was not refuted by Appellants. Therefore the court does not find that these issues raise any genuine issues of material fact that would preclude the entry of summary judgment by the trial court

{¶38} Thus, based on all of the above, Appellants' first and second assignments of error are without merit and the judgment of the trial court is affirmed.

**Donofrio, J., concurs.**

**Robb, J., concurs.**

Case No. 17 CO 0030

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**