[Cite as *Lepowsky v. Lepowsky*, 2010-Ohio-1544.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| ELAINE LEPOWSKY | ) | CASE NOS. 08 CO 10 |
| | ) | 08 CO 29 |
| PLAINTIFF-APPELLANT | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| CHARLES LEPOWSKY, JR. | ) | |
| | ) | |
| DEFENDANT-APPELLEE | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from the Court of Common Pleas of Columbiana County, Ohio Case No. 2002DR578

JUDGMENT:      Affirmed in Part. Overruled in Part. Modified. Remanded.

APPEARANCES:

For Plaintiff-Appellant:      Atty. Anne S. Magyaros
1188 Bell Road, Suite 105
Chagrin Falls, Ohio 44022

For Defendant-Appellee:      Atty. Douglas A. King
Hartford, Dickey & King Co., LPA
91 West Taggart Street
P.O. Box 85
East Palestine, Ohio 44413

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: March 31, 2010

WAITE, J.

**{¶1}** Appellant, Elaine Lepowsky, appeals two separate decisions and judgment entries of the Columbiana County Court of Common Pleas in this consolidated appeal. Elaine challenges the trial court's amended spousal support award and the denial of her motion for attorneys' fees and expenses. She also appeals the denial of her subsequent motion to modify the amended spousal support award.

**{¶2}** Because the trial court abused its discretion when amending the spousal support award, we reverse the trial court's determination and modify the amount of the original spousal support award to $3,000 (plus a 2% administrative fee), to be applied retroactively to the date of the divorce decree and to continue for an unlimited duration, and order the trial court to calculate the arrearage and set a monthly arrearage payment in accordance with R.C. 3123.21. Because the trial court abused its discretion in part when it denied Elaine's motion for appellate attorneys' fees, we award attorneys' fees in the amount of $6,889.19.

**{¶3}** Because we recognize that modification of trial court awards, while authorized, is rare, we will discuss the history of this matter in some detail. This case has had an unnecessarily long and tortured procedural past. The trial court issued a divorce decree to the parties on July 12, 2004. At the time, the parties had been married for 36 years. While Appellee, Charles Lepowsky, Jr., had maintained a steady and good paying job, Elaine was a homemaker. As regards spousal support, at the time of the divorce decree, Elaine was awarded support in the amount of

$1,000.00 (plus a 2% administrative fee) for eighty-two months, and Charles was ordered to pay Elaine's COBRA premiums for twenty-four months. (7/12/04 J.E., pp. 10-11.) The trial court stated in the divorce decree that it would not retain jurisdiction to modify the award. (7/12/04 J.E., p. 10.)

**{¶4}** The spousal support award was directly predicated on the trial court's assumption that Elaine would complete medical transcriptionist course work, which she began after the parties separated, and the speculation that she would then secure a full time position paying $8 to $10 per hour with medical insurance benefits. (7/12/04 J.E., p. 9.)

**{¶5}** Elaine timely appealed the July 12, 2004 judgment entry, challenging the trial court's decision with respect to the division of marital property and the amount and duration of spousal support. In an Opinion dated February 9, 2006, we found no abuse of discretion with respect to the division of marital property. We did reverse and remand the trial court's determination as to spousal support specifically to allow the trial court to, "indicate the basis for its award of spousal support in sufficient detail to enable a reviewing court to determine whether the award is fair, equitable and in accordance with the law." *Lepowsky v. Lepowsky*, 7th Dist. No. 04 CO 42, 2006-Ohio-667, ¶4 (*"Lepowsky I"*).

**{¶6}** Before remand, in *Lepowsky I*, we summarized the parties' earning histories and future earning abilities as follows:

{¶7} "Elaine and Charles were married in 1968. The couple had four children, who were all adults by the time Elaine filed her complaint for divorce in September 2002. At the time of the divorce, Elaine was 55 and Charles was 54.

{¶8} "Elaine has little more than a high school education and was primarily a homemaker during the couple's marriage. She obtained a beautician's license at one time, but that license lapsed by the time she filed for divorce. At the time she filed for divorce, she was earning some extra money by cleaning houses. While the case was pending, Elaine took classes so she could be a medical transcriptionist, at which she would make between eight and ten dollars per hour. Those classes were not complete at the time of the final divorce hearing.

{¶9} "During the marriage, Charles worked for General Motors. Between 1999 and 2003, he never earned less than $83,900.00 and was projected to earn around $101,000.00 in 2004." Id. at ¶5-7.

{¶10} In reversing and remanding on the issue of spousal support, we cautioned the trial court that it would be hard-pressed to demonstrate the equity of its award based on the facts in the record:

{¶11} "Even if the trial court imputed income of $10.00 per hour to Elaine and assumed that she worked forty hours per week, fifty-two weeks per year, then her gross income would only be $20,800.00. Thus, after the trial court's spousal support award, Charles would earn approximately $88,760.00 per year, while Elaine would only have about $33,040.00 per year. This is a fairly large discrepancy, especially considering the length of the marriage and the disparity in future social security

benefits. *This discrepancy would be large even if the trial court had doubled the spousal support award. In that case, Elaine would have about $45,280.00 per year, while Charles would retain about $76,520.00.*" (Emphasis added). Id. at ¶53.

**{¶12}** On remand, the trial court issued a terse three-page judgment entry stating that the spousal support award was intended to provide supplemental income to Elaine until she reached retirement. With fleeting reference to the statutory factors listed in R.C. 3105.18, but no actual analysis of those factors, the trial court concluded that Elaine "could enjoy a good standard of living" based upon her (speculative) potential future income and the $1,000.00 per month in spousal support. (4/27/06 J.E., p. 3.) Elaine appealed the amount and duration of the spousal support award for a second time on May 3, 2006, and also appealed, for the first time, the trial court's decision not to retain jurisdiction over the spousal support award.

**{¶13}** In an Opinion dated September 17, 2007, we reversed the trial court's decision as to spousal support for a second time. Because the trial court's second entry, on remand, fell far short of providing the necessary findings sought by this Court, in our September, 2007 Opinion, we undertook a lengthy and detailed analysis of the factors listed in R.C. 3105.18. *Lepowsky v. Lepowsky*, 7th Dist. No. 06 CO 23, 2007-Ohio-4994 (*"Lepowsky II"*). We succinctly observed that "most, if not all" of the factors enumerated in the spousal support statute favored Elaine. Id. at ¶44.

**{¶14}** Further, while we acknowledged that, "[e]qualization of income is not a factor that must be considered or a goal in divorce cases," we also recognized that,

"the award must nonetheless be equitable in light of the factors in each case." (Internal citations omitted.) Id. at ¶43. "To be equitable, the parties should, if feasible, enjoy a standard of living comparable to that enjoyed during the marriage, adjusted by the factors set forth in R.C. 3105.18." Id., citing *Gallo v. Gallo*, 11th Dist. No.2000-L-208, 2002-Ohio-2815, at ¶40; *Buckles v. Buckles* (1988), 46 Ohio App.3d 102, 110, 546 N.E.2d 950.

{¶15} After examining all of the relevant statutory factors, we reviewed several cases from other districts involving marriages exceeding twenty years in duration where the wife's primary role was homemaking. In each of the cases, the trial court awarded indefinite spousal support based upon the length of the marriage, the age of the parties, and inability of the wife to develop the skills to attain meaningful employment. Id. at ¶45-57.

{¶16} We ultimately concluded that the trial court's assumptions about Elaine's future income were too speculative and were not supported by the record. Id. at ¶59. In fact, we observed that the record actually established that Elaine earned less than $5,000 per year cleaning houses at the time of trial. Id. at ¶60.

{¶17} We reiterated as we did in *Lepowsky I*, that, "[e]ven with the speculative imputed income and the trial court's award, the parties still have a great disparity in income. Charles will earn about $88,760 after support payments and before taxes, and Elaine will receive $12,240 per year in support plus her imputed income for a total of about $33,040 per year after support and before taxes." Id. at ¶82.

**{¶18}** In our Opinion we recognized that, despite the trial court's statement that the spousal support award would provide an additional "safety net" to Elaine's retirement years, the payments as ordered would actually terminate when she was 62 years old, forcing her to take a permanently reduced rate of benefits. Id. at ¶64. Thus, the consideration of the parties' retirement benefits favored an increase in the duration of the award. Id. at ¶63. Finally, we noted the fact that during the marriage the Lepowskys enjoyed an upper-middle class lifestyle, which included a nice home, nice clothes, new cars, and antiques. Id. at ¶15-16.

**{¶19}** Based on the length of the marriage and standard of living to which the parties were accustomed and their relative earning capabilities, we held that the trial court had abused its discretion in calculating both the amount and duration of spousal support, and that a "longer, probably indefinite" spousal support award was in order. Id. at ¶83. Additionally, after reviewing several other cases, we held that the trial court should have retained jurisdiction over the spousal support award due to the speculative nature of Elaine's future income. Id. at ¶93.

**{¶20}** We specifically held that, "[o]n remand, the trial court should *increase its award in both amount and duration* and attempt to allow Elaine to maintain a standard of living that was established during the parties' long marriage. The court should also retain jurisdiction over the spousal support award." (Emphasis added.) Id. at ¶94.

**{¶21}** After the case was remanded to the trial court, on December 4, 2007, Elaine filed a motion for attorney fees and expenses. Specifically, Elaine sought to

enforce a provision of the divorce decree that required Charles to pay for the preparation of Qualified Domestic Relations Orders ("QDROs"), to be reimbursed for the trial transcripts that were prepared for the appeal in *Lepowsky II*, and for attorneys fees incurred, "in pursuing the two appeals filed in connection with this matter, and in attempting to gain [Charles'] compliance with the payment of previously awarded expenses." (12/4/07 Motion, p. 2.)

**{¶22}** With respect to the QDROs, Elaine submitted a detailed list of expenses that included a $900.00 bill for the preparation of the QDROs from Pension Evaluators (which included a $200 charge for expedited service) as well as charges for copying, postage, and Federal Express fees. Elaine also sought $781.65 in attorneys' fees for time that her attorney spent compiling and providing information to Pension Evaluators.

**{¶23}** After Elaine filed the motion, Charles forwarded $700 to Elaine. He argued to the trial court that the charge for expedited service should be borne by Elaine, because it was her counsel's procrastination that created the need for expedited service. Elaine's counsel conceded that fact to this Court at oral argument. Charles also argued that the divorce decree only required that he pay the bill from Pension Evaluators, and did not contemplate that he reimburse Elaine for any fees generated by her attorney during the preparation of the QDROs.

**{¶24}** With respect to the remainder of Elaine's claims, Charles argued that this Court had exclusive jurisdiction over costs awarded pursuant to App.R. 24(B).

He also accused Elaine's counsel of double-billing and failing to demonstrate that the attorneys' fees were reasonable.

**{¶25}** On February 1, 2008, the trial court retroactively increased the spousal support award from $1,000 to $1,500 per month (with a 2% administrative fee), but did not increase the duration of the award. According to the judgment entry, the $21,000 arrearage, which had accumulated from August 1, 2004, to the date of the February 1, 2008, judgment entry, was to be paid in monthly installments of $200 (with a 2% administrative fee).

**{¶26}** The trial court also summarily denied Elaine's motion for attorneys' fees and expenses. The trial court stated that, "[t]here has been no evidence or affidavit presented to the Court from someone other than Plaintiff's counsel that such fees and expenses are reasonable and it further appears to the Court the *fees were generated by appeals which Plaintiff decided to file*. Both parties have incurred fees and expenses in connection with the multiple appeals." (Emphasis added.) (2/1/08 J.E., p. 7.)

**{¶27}** In addition to modestly increasing (with no analysis) the amount of the spousal support award and denying the motion for attorneys' fees and expenses, the trial court made several pointed comments regarding our decision in *Lepowsky II* in its February 1, 2008, judgment entry. The trial court began the entry by stating that it found itself, "in the unenviable position of being directed by the Court of Appeals to set an increased amount of spousal support based on the Appellate Court's analysis of the statutory factors which a trial court is to consider in awarding spousal support."

(2/1/08 J.E., p. 2.)  The trial court also hastened to chide, not once but twice, that in *Lepowsky I* we made no mention of the trial court's decision not to retain jurisdiction over the spousal support award.  (2/1/08 J.E., pp. 2, 4.)

**{¶28}** Finally, the trial court inexplicably stated:  "Rather than to make the award on the same record which the trial court had before him, the Appellate Court chose to remand the matter directing this Court to set a new amount based upon their analysis of the statutory factors."  (2/1/08 J.E., p. 4.)  Elaine appealed the spousal support award for a third time on February 22, 2008.

**{¶29}** Prior to filing this third appeal, Elaine also filed a motion to modify spousal support on February 8, 2008.  At the hearing on the motion to modify, Elaine testified that she had completed medical transcription training with the help of several classmates, but had been unable to find a full-time position in the field.  (5/14/08 Tr., p. 43.)  She struggled through her classes and conceded that she did not have the confidence required to perform the job.  (5/14/08 Tr., p. 82.)  She further testified that she was reluctant to give up her regularly-scheduled cleaning jobs in order to accept part time work as a transcriptionist.  (5/14/08 Tr., pp. 67-68, 83, 93.)

**{¶30}** She currently charges $12 per hour for house cleaning and typically works thirty hours a week.  (5/14/08 Tr., pp. 64-65.)  She accepted a part time job at Rite Aid in 2007 but left after working approximately three months because she was overwhelmed by the pressure.  (5/14/08 Tr., p. 47.)  She had applied for other jobs but was always offered part time employment making $7.00 to $7.50 an hour.

(5/14/08 Tr., p. 65.) Elaine was 58 years old on the date of the hearing. (5/14/08 Tr., p. 47.)

**{¶31}** In 2007, Elaine had business income of $9,588, coupled with $1,673 of income from Rite Aid. (5/14/08 Tr., p. 44.) She twice attempted to acquire health insurance after her COBRA coverage terminated, but she was rejected on both occasions. (5/14/08 Tr., p. 48.) She currently suffers from osteopenia (lower than normal peak bone mineral density), carpal tunnel syndrome, and osteoarthritis, but was unable to afford routine medical exams in 2007. (5/14/08 Tr., pp. 48-50.)

**{¶32}** Due to her meager income, she has been forced to give up her land line telephone, her internet service, and her dog. (5/14/08 Tr., pp. 51, 75.) Her automobile is seven years old and her residence, which she purchased with the proceeds of her divorce settlement, is in need of new siding and basement waterproofing. (5/14/08 Tr., p. 61.)

**{¶33}** Charles testified that his gross income in 2006 was $105,818.61, and $111,821.13 in 2007. (5/14/08 Tr., pp. 18-19.) A paystub from April of 2008 indicated that Charles received a weekly net pay of $955.19, for a fifty-five hour work week.

**{¶34}** However, Charles testified that overtime at General Motors was "drying up" based upon cost cutting efforts like outsourcing of work. (5/14/08 Tr., p. 22.) He submitted a pay stub from May of 2008, which reflected a weekly net pay of $380.18 for a forty hour work week. (5/14/08 Tr., p. 34.) Charles currently pays

approximately $400 per week in spousal support, which includes the $200 arrearage. (5/14/08 Tr., p. 23.)

**{¶35}** Charles has a $77,000 mortgage in the form of a home equity loan on his residence, for which he makes payments between $500 and $700 a month. (5/14/08 Tr., p. 24.) He makes monthly car payments totaling $700 per month for two vehicles, although he actually owns three vehicles. (5/14/08 Tr., p. 24.) He testified that two of the vehicles have "blown motors." (5/14/08 Tr., pp. 31-32.)

**{¶36}** According to his testimony, the loan for the 2002 GMC conversion van, which is the only vehicle that operates, would be satisfied approximately four months after the hearing, which would reduce his car payments by $279 per month. (5/14/08 Tr., p. 38.) The auto loans appear to be automatically withdrawn from his paycheck, and must be added back into his net pay for the purpose of calculating his ability to pay his monthly expenses. (Pl.'s Exh. 11, Def.'s Exh. A, attached to 5/14/08 hearing transcript.)

**{¶37}** Charles stated that he supports his live-in girlfriend, who was recently diagnosed with epilepsy and cannot work. (5/14/08 Tr., p. 37.) He insures her car, in addition to insuring his own vehicles. (5/14/08 Tr., p. 38.) He spends $700 per month on food. (5/14/08 Tr., p. 37.) Although he testified that his girlfriend would be receiving food stamps in the near future, he was unwilling to project any reduction in his monthly food expense because, "she doesn't eat a lot." (5/14/08 Tr., pp. 36-37.)

**{¶38}** Charles went on three golfing trips in 2007, and, as of the May 14, 2008 hearing, had gone on one trip in 2008. He pays monthly dues in the amount of $130 to Salem Hills Golf and Country Club. (5/14/08 Tr., p. 35.)

**{¶39}** The parties' income since the issuance of the divorce decree was summarized at the hearing as follows:

|      | Charles | Elaine |
|------|---------|--------|
| 2007 | 111,821 | 11,261 |
| 2006 | 105,818 | 12,744 |
| 2005 | 124,012 | 8,565  |
| 2004 | 103,665 | 5,734  |

(5/14/08 Tr., pp. 17-19, 44-46.) The 2007 figure includes Elaine's wages from Rite Aid as well as business income from her housekeeping business.

**{¶40}** In a judgment entry dated June 27, 2008, the trial court denied Elaine's motion to modify spousal support. The trial court premised its decision on a two and one half page excerpt from Charles' post hearing brief, which was made a part of the judgment entry. (6/27/08 J.E., pp. 4-6.)

**{¶41}** The trial court concluded that Elaine had failed to show a substantial change in circumstances, based upon the court's observation that Charles' income had decreased since 2004, while Elaine's income "has doubled." (6/27/08 J.E., p. 5.) The trial court also stated that, "[t]he fact that [Elaine] voluntarily chooses not to seek employment in the field for which she is trained, should not be considered as a change in circumstances such that [Charles'] spousal support obligation should be increased. In fact, quite the opposite is true." (6/27/08 J.E., p. 5.)

**{¶42}** Finally, the trial court found, "[a]n additional change in circumstances is that [Elaine] now owns an Eighty-Two Thousand Dollars ($82,000.00) home in the City of Salem, upon which there is no mortgage." (6/27/08 J.E., p. 6.)

**{¶43}** Elaine timely appealed the trial court's denial of her motion to modify spousal support. The appeal of her support order and her motion to modify were consolidated. Appellant's first three assignments of error challenge the trial court's spousal support award as it relates to our decision in *Lepowsky II*. They will be addressed together for the purpose of judicial economy.

### Assignment of Error I

**{¶44}** "THE TRIAL COURT ERRED IN FAILING TO INCREASE THE AMOUNT OF THE SPOUSAL SUPPORT AWARD TO ALLOW APPELLANT TO MAINTAIN THE STANDARD OF LIVING ESTABLISHED DURING THE PARTIES' LONG TERM MARRIAGE AS PER THE SPECIFIC DIRECTIVES OF THIS APPELLATE COURT IN ITS SEPTEMBER 17, 2008 REMAND ORDERS."

### Assignment of Error II

**{¶45}** "THE TRIAL COURT ERRED IN FAILING TO EXTEND THE DURATION OF SPOUSAL SUPPORT AS DIRECTED BY THE APPELLATE COURT IN ITS REMAND ORDERS."

### Assignment of Error III

**{¶46}** "THE TRIAL COURT ERRED IN ORDERING JUST $200/MONTH ADDITIONAL SUPPORT TO PAY ON THE ACCUMULATED ARREARAGES."

**{¶47}** A trial court has broad discretion in determining spousal support, and a support award should not be disturbed without finding that an abuse of discretion has occurred. *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 350 N.E.2d 413. Thus, a spousal support decision should be upheld unless the trial court's attitude is arbitrary, unconscionable, or unreasonable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

**{¶48}** In both of the previous appeals, we made it clear to the trial court that a spousal support order, even in the amount of $2,000 per month, was inequitable in this case based on the length of the marriage and Charles' markedly superior earning power. Moreover, in *Lepowsky II*, we concluded that a longer period of support, even an award of unlimited duration, was appropriate in this case. Despite these conclusions based on our review of this record, the trial court awarded $1,500 per month to Elaine for the original eighty-two month period set in the divorce decree following the second remand.

**{¶49}** We cannot but conclude, for a third time, that a spousal support award that is less than $2,000 in this case is inequitable based upon the parties' income and earning power, and the duration of the marriage. The Supreme Court of Ohio has recognized that, "[a]bsent extraordinary circumstances, * * * an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 462 N.E.2d 410, syllabus. The trial court has committed an abuse of its discretion in this case.

**{¶50}** The trial court, in addition to abusing its discretion in the support award itself, also abused its discretion when it ordered payment of the arrearage. R.C. 3123.21(A) governs the calculation of arrearage payments and reads, in it entirety:

**{¶51}** "A withholding or deduction notice described in section 3121.03 of the Revised Code or an order to collect current support due under a support order and any arrearage owed by the obligor under a support order pertaining to the same child or spouse shall be rebuttably presumed to provide that the arrearage amount collected with each payment of current support equal at least twenty per cent of the current support payment."

**{¶52}** A trial court may deviate from the statutorily prescribed amount, and in doing so, "may consider evidence of household expenditures, income variables, extraordinary health care issues, and other reasons for a deviation from the twenty per cent presumption." R.C. 3123.21(B).

**{¶53}** Hence, the trial court's order that Charles pay $200 per month instead of $300 per month, 20% of the court ordered payment, with no explanation whatsoever for the downward departure, was error. Notably, under the order made following *Lepowsky II*, Charles would continue to make his $200 arrearage payments for over five years after the $1,500 monthly spousal support payments had terminated.

**{¶54}** We have twice remanded this case to the trial court to fashion an equitable spousal support award and to explain such an award sufficiently for our review. We are cognizant that a trial court is ordinarily in the best position to do so.

However, in addition to the power to remand a matter to the trial court, Ohio Appellate Rule 12 also authorizes us to modify a judgment of the trial court when necessary. Rule 12(B) reads, in pertinent part:

**{¶55}** "When the court of appeals determines that the trial court committed error prejudicial to the appellant and that the appellant is entitled to have judgment or final order rendered in his favor as a matter of law, the court of appeals shall reverse the judgment or final order of the trial court and render the judgment or final order that the trial court should have rendered, or remand the cause to the court with instructions to render such judgment or final order. In all other cases where the court of appeals determines that the judgment or final order of the trial court should be modified as a matter of law it shall enter its judgment accordingly."

**{¶56}** It is with considerable reluctance that we employ our power under App.R. 12 to modify the spousal support award in this case. However, based upon the trial court's apparent reluctance to follow our previous orders, as well as its pointed language contained in the entry following our second remand, we can only view this as an abdication of power on the part of the trial court. The complete futility of remanding the spousal support issue to the trial court for yet a third time is obvious by the trial court's statements at the hearing on Elaine's motion to modify spousal support:

**{¶57}** "If the Court of Appeals disagrees with me -- and I'm talking to the parties now in the case, that's fine. There are three of them; one of me. So if they disagree with me fine. But they are looking at the same record that I am looking at.

So if they have some different opinion about what the spousal support should be, they have the power to set it. I am sure counsel agrees with that. They chose not to do that. They have chosen to bounce it back a couple of times, which disappoints me. Not because they disagree with me, but because I know it's time and expense for everybody else in this case.

{¶58} "And I am doing the best I can do; I'm doing what I think is right based on this record, but their job is to review my work.

{¶59} "So I just want you to understand, none of us in this room are responsible for the fact that we're back here again. It's because they chose, the Court of Appeals chose, to send it back here to continue this case at this level.

{¶60} "So, you know, we will do the best we can with what we have." (5/14/08 Tr., pp. 11-12.)

{¶61} An appellate court has the authority to modify the decision of an inferior court when the interests of justice and efficiency would unlikely be served by remanding the case. App.R. 12(B); *In re Testamentary Trust of Manning*, 7th Dist. No. 05 MA 2, 2005-Ohio-4764, ¶39-48 (modification of fiduciary fees was warranted when inferior court refused to comply with appellate orders on remand causing lengthy delays), citing *Gockstetter v. Gockstetter* June 23, 2000), 6th Dist. No. E-98-078 (modifying monthly spousal support); *Stychno v. Stychno* (Aug. 14, 1998), 11th Dist. Nos. 97-T-0003, 96-T-5620 (modifying division of marital estate and support award in light of repeated remands). Based upon this authority, it is clear that this is one of those rare cases where the interests of justice are better served by a

modification of the trial court's judgment, given the trial court's disregard of the law of the case, and the lengthy delays suffered by the parties as a result of repeated litigation and review.

{¶62} By now, the record in this case is replete with evidence which allows us to simply do as the trial court asks and fashion an order for the parties based on this record. Based on Charles' projected income of $101,000 in 2004, we find that a retroactive spousal support award of $3,000 (plus a 2% administrative fee) is equitable in this matter. Coupled with Elaine's projected business income for 2004, approximately $5,000, this award would have provided Elaine, as of the date of divorce, an annual income of $41,000 and Charles would have had an annual income of $65,000. Because of the length of the marriage and ages of the parties, the spousal support award is to continue for an indefinite term, and the trial court will retain jurisdiction over the matter.

{¶63} Of course, the substantial increase in the spousal support award, while certainly supported in this record and long overdue, will create a substantial arrearage, due to the length of time that has passed since the date of the original divorce decree; forty-two months passed between the issuance of the divorce decree and the trial court's amended spousal support award following our decision in *Lepowsky II*. If we assume April 1, 2010, as the date for the initial $3,000 spousal support award, an additional twenty-six months will have passed between the issuance of the trial court's amended spousal support award and our decision in the pending consolidated appeal, for a total of sixty-eight months.

**{¶64}** Upon remand, we order the trial court to calculate the arrearage and set a monthly arrearage payment in accordance with R.C. 3123.21.

**{¶65}** In sum, the trial court has twice abused its discretion in this case. Even the amended spousal support award was $500 less than an amount we deemed minimally inequitable in two previous Opinions. The arrearage based on this inadequate award was calculated incorrectly pursuant to statute and there was no explanation for the downward deviation. Further, the trial court wholly ignored our directive in *Lepowsky II* to enter a longer, probably indefinite, term of spousal support. Accordingly, Elaine's first, second and third assignments of error are sustained and we modify the award accordingly.

<u>Assignment of Error IV</u>

**{¶66}** <u>"THE TRIAL COURT ERRED IN FAILING TO AWARD ATTORNEY'S FEES AND EXPENSES."</u>

**{¶67}** R.C. 3105.73(A) reads, in its entirety:

**{¶68}** "In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate."

**{¶69}** A decision to award attorneys' fees is reviewed for an abuse of discretion. *Patino v. Foust*, 8th Dist. No. 90475, 2008-Ohio-6280, ¶22. The Supreme

Court has repeatedly held the term abuse of discretion implies the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore*, supra.

{¶70} The trial court gave two reasons for denying Elaine's motion for appellate attorneys' fees. First, the court stated that Elaine did not provide an affidavit of an outside expert (other than her own counsel) attesting that the fees she sought were reasonable. The second and more troubling reason stated by the court was that, "it further appears to the Court the fees were generated by appeals which Plaintiff decided to file. Both parties have incurred fees and expenses in connection with the multiple appeals." (2/1/08 J.E., p. 7.)

{¶71} While it is true that litigants may provide the affidavit of an expert attesting that the attorneys' fees that are requested are reasonable, the trial court did not cite any statute or caselaw, nor could we find any statute or caselaw, for the proposition that such an affidavit is required. The request for fees was supported by Elaine's counsel's affidavit. Charles provided absolutely no evidence challenging this affidavit or the reasonableness of the attorneys' fees, and, therefore, the only evidence before the trial court was the uncontroverted affidavit of Elaine's counsel.

{¶72} Of greater concern, is the trial court's second reason for denying Elaine's motion. The court specifically denied fees because it was Elaine who filed the appeals. This clearly constitutes an abuse of discretion. Of course, the trial court may consider the parties' conduct in awarding attorneys' fees in a divorce case pursuant to R.C. 3105.73(A). However, it is plain that neither of Elaine's appeals

were frivolous; both appeals were successful. Therefore, the trial court acted unreasonably in denying her motion for attorneys' fees for that stated reason, alone.

{¶73} Turning to the motion, with respect to Elaine's claims for reimbursement of attorneys' fees for preparation of the QDROs, we find that the divorce decree contemplated only reimbursement for the fees charged by Pension Evaluators. Consequently, the denial of her motion for attorneys' fees for the preparation of the QDROs does not constitute reversible error. Furthermore, with respect to the fees for expedited service, Elaine's counsel conceded at oral argument that she was responsible for the additional fees. Therefore, the trial court's decision denying the payment of the expedited fees does not constitute reversible error.

{¶74} The issue of reimbursement for the transcripts appears to be moot. Charles' attorney represented in his response brief to the supplement to the motion for attorneys' fees that he had directed Charles to reimburse Elaine for the transcript fee. Elaine does not raise that issue on appeal.

{¶75} With respect to Elaine's request for appellate attorneys' fees, we have reviewed the billing sheet attached to her motion and find that Charles is correct that certain line items relate to the preparation of the QDROs rather than the two appeals in this case. Deleting those fees which appear to relate to the preparation of the QDROs, and considering the factors listed in R.C. 3105.73(A), we find that Elaine is to be awarded attorneys' fees in the amount of $6,889.19.

{¶76} While pursuing both appeals, Elaine was struggling to make ends meet while Charles was still enjoying the benefits of an upper-middle class life style,

vacationing and maintaining membership in a private golf club. Despite the fact that the trial court twice ignored the Opinion of this Court that the minimum award that would be equitable here was at least $2,000 per month, Charles apparently made no effort to settle the matter consistent with our Opinion, choosing instead to force Elaine to file a third and fourth appeal in this case, as well as forcing her to wait another two years to receive an equitable spousal support award. Based upon Charles' income and his conduct, we find that Elaine's motion for appellate attorneys' fees should have been granted.

**{¶77}** Accordingly, Elaine's fourth assignment of error is sustained in part, with respect to the appellate attorneys' fees, and overruled in part, with respect to the QDRO attorneys' fees and the charges for expedited service.

Assignment of Error V

**{¶78}** "THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION TO INCREASE SPOUSAL SUPPORT."

**{¶79}** Because we sustain Elaine's first three assignments of error, her fifth assignment of error is moot.

**{¶80}** In summary, Elaine's first, second, and third assignments of error are sustained. Pursuant to App.R. 12, we hereby modify the second full paragraph on page 10 of the divorce decree as follows:

**{¶81}** "The Court sets the spousal support award payable by Charles Lepowsky, Jr. to Elaine Lepowsky in the amount of $3,060 (which includes a 2% administrative fee) per month due on the first day of every calendar month with the

first payment due August 1, 2004. The trial court reserves jurisdiction to make further modifications of spousal support. It is ordered that the spousal support award herein shall terminate on the first of the following events to occur: the death of either of the parties hereto; the remarriage of the Wife; or her cohabitation with a non-relative adult male."

{¶82} In addition, we remand this matter to the trial court to calculate the arrearage and to set a monthly arrearage payment in accordance with R.C. 3123.21.

{¶83} Elaine's fourth assignment of error with respect to attorney fees is sustained in part, and she is granted appellate attorneys' fees in the amount of $6,889.19. This assignment is also overruled in part, with respect to the amount of attorneys' fees sought due to the preparation of the QDROs and the bill for expedited services. A judgment shall be entered against Charles Lepowsky, Jr. and in favor of Elaine Lepowsky in the amount of $6,889.19 on this issue. Appellant's fifth assignment of error is moot.

Vukovich, P.J., concurs.

DeGenaro, J., concurs.