[Cite as *Bangor v. Amato*, 2014-Ohio-5503.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CHRISTINE BANGOR, | ) | |
| | ) | CASE NO.   14 CO 9 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| CHARLES AMATO, | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |


CHARACTER OF PROCEEDINGS:          Civil Appeal from Common Pleas Court,
Case No. 12CV753.


JUDGMENT:                         Affirmed.


APPEARANCES:
For Plaintiff-Appellant:           Attorney Andrew Simon
                                   Attorney James Simon
                                   6000 Freedom Square Drive
                                   Freedom Square II, Suite 165
                                   Independence, Ohio  44131


For Defendant-Appellee:            Attorney Stephen Griffin
                                   Attorney Michael Kahlenberg
                                   825 South Main Street
                                   North Canton, Ohio  44720


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite


                                   Dated:  December 8, 2014

VUKOVICH, J.

**{¶1}** Plaintiff-appellant Christine Bangor appeals the decision of the Columbiana County Common Pleas Court granting defendant-appellee Charles Amato's motion for summary judgment and motion to dismiss the fraud claim. In granting summary judgment for Amato, the trial court found that Bangor's expert's credentials were lacking pursuant to Evid.R. 702 and excluded his testimony as an expert. In this appeal we are asked to answer two questions. First, did the trial court abuse its discretion in excluding Bangor's expert's testimony? Second, did the trial court err when it dismissed the fraud claim because of its conclusion that there was no legal authority to support such a claim?

**{¶2}** For the reasons espoused below, the trial court's decisions are hereby affirmed. The trial court did not abuse its discretion in excluding Bangor's expert's testimony. Likewise, the trial court did not err in dismissing the fraud claim.

### Statement of the Facts and Case

**{¶3}** This case is a legal malpractice and fraud case that was initiated by Christine Bangor against her divorce attorney, Charles Amato. 11/26/12 *Pro se* Legal Malpractice Complaint; 03/11/13 Amended Complaint.

**{¶4}** On November 18, 2010, Christine Bangor retained Amato to represent her in her divorce action against Richard Bangor; it was a flat fee agreement. On November 23, 2011, with the help of their attorneys, Christine and Richard Bangor entered into a Separation Agreement. At the time of the agreement, Christine and Richard had been married 17 years and one of their children was still a minor. The agreement set forth custody, child support, division of property, and spousal support. That agreement was reviewed and found to be fair and equitable. 11/28/11 Magistrate's Decision; 11/28/11 J.E.

**{¶5}** The portions of the separation agreement that are at issue in a legal malpractice action are spousal support, marital debt, and the division of Richard Bangor's 401(K). The separation agreement provided that Richard would pay Christine $1,200 a month in spousal support for 59 months. The agreement indicated that Richard would pay the majority of the marital debt, which according to

his attorney, was close to $250,000. As to the 401(K), which was valued at approximately $611,000, the marital portion of the plan was determined to be $105,245.72 "by way of a present value determination conducted by Pension Evaluators, A division of QDRO Consultants Co., LLC." 11/23/11 Separation Agreement. Fifty percent of the marital portion was awarded to Christine.

{¶6} The allegation in the legal malpractice action is that if Christine Bangor had gone to trial rather than settle, the outcome would have been more favorable to her; she claims that she would have gotten a larger portion of her ex-husband's pension and received a larger spousal support award. Specifically, she contended that had Amato been aware of current case law of this district she would have received a larger spousal support award. She claimed that given the duration of the marriage and the disparity in earning ability, she should have received spousal support in the amount of $4,000 a month for 68 months instead of receiving $1,200 a month for 59 months. As to the 401(K), she claimed that Amato should not have relied on Richard's pension evaluator. She asserted that had a separate evaluation been done it would have shown that she was entitled to half of the entire pension.

{¶7} As to her fraud claim, Christine argued that Amato had a duty to disclose his prior relationship with Richard's divorce attorney, Attorney Hartford. Christine claimed that Attorney Hartford had represented Amato on at least four prior occasions, one of which was for Amato's divorce. She argued that the alleged conflict of interest affected Amato's ability to adequately represent her.

{¶8} Amato filed an answer and counterclaim asserting breach of contract because Christine has failed to pay the balance of the fee. 12/24/12 Answer and Counterclaim. He also moved to dismiss the fraud claim arguing that there is no recognized duty upon which a fraudulent concealment claim can be applied to the facts at hand. 03/06/13 Motion to Dismiss.

{¶9} After considering the motions, the trial court granted the motion to dismiss the fraud claim; "the Court finds that there is no legal authority to support such a claim and that to permit discovery would only result in a true 'fishing expedition.'" 05/28/13 J.E.

**{¶10}** Thereafter, Amato moved for summary judgment on his counterclaim and on Christine's remaining claims. 09/19/13, 11/08/13 Motions. In the November summary judgment motion, Amato sought to exclude Peter Sackett, Christine's witness, as an expert. Christine opposed Amato's motions and moved for leave to file her own summary judgment motion. 10/02/13; 11/15/13 Motions. Attached to her motion for leave was a copy of her summary judgment motion. 11/15/13 Motion. On January 22, 2014, the trial court granted Christine's motion for leave. 1/22/14 J.E.

**{¶11}** That same day, the trial court considered the opposing motions for summary judgment and the request to exclude Christine's expert. The trial court concluded that Christine's expert did not qualify as an expert under Evid.R. 702 and excluded his testimony. The court then found that Christine had not presented any credible evidence that she would have received a better result had she gone to trial rather than to settle. Thus, the court overruled Christine's motion for summary judgment. It then granted summary judgment for Amato on Christine's malpractice claim and granted him summary judgment on his counterclaim for unpaid attorney fees. 01/22/14 J.E.

**{¶12}** Christine timely appealed the trial court's rulings.

<u>First Assignment of Error</u>

**{¶13}** "The trial court erred in making factual determinations regarding the correctness of the opinions of Ms. Bangor's expert, Peter Sackett, rather than leaving those factual determinations for the jury."

**{¶14}** In Ohio, the general rule of law regarding a legal malpractice claim is that the plaintiff alleging legal malpractice must present expert testimony on professional standards of conduct. *McInnis v. Hyatt Legal Clinics*, 10 Ohio St.3d 112, 113, 461 N.E.2d 1295 (1984); *Perotti v. Beck*, 7th Dist. No. 00CA249 (Sept. 24, 2001). Summary judgment in favor of the attorney is mandated when the plaintiff fails to supply expert testimony on the alleged negligence. *See Bloom v. Dieckmann* (1983), 11 Ohio App.3d 202, 464 N.E.2d 187 (1st Dist.1983); *Polivka v. Cox*, 10th Dist. No. 01AP-1023, 2002-Ohio-2420, ¶ 9.

**{¶15}** Therefore, in order to survive summary judgment, Christine was required to offer expert testimony. Her expert was Attorney Peter Sackett. Sackett testified that he has practiced law actively in Ohio since 1984 and that 60 to 65 percent of his practice is divorce work. Sackett Depo. 6. Sackett opined that Attorney Amato was negligent in his representation of Christine Bangor in advising her to enter into the settlement agreement. Sackett asserted that had she gone to trial, rather than settle, she would have received more in spousal support and more of the 401(K).

**{¶16}** Attorney Amato challenged Sackett's credentials as an expert witness. After discussing Sackett's report, the court stated that it found "Mr. Sacketts' [sic] credentials lacking as a matter of law pursuant to Evid.R. 702." 01/22/14 J.E.

**{¶17}** We are asked to review that determination. Thus, we are asked to determine whether the trial court abused its discretion in executing its gatekeeper function. *Theis v. Lane*, 6th Dist. No. WD-12-047, 2013-Ohio-729, ¶ 12 (Trial court excluded expert testimony during summary judgment because it was determined not qualified under Evid.R. 702. The appellate court reviewed that decision under an abuse of discretion standard of review.). Discretion in determining the admissibility of expert testimony generally lies with the trial court. *Valentine v. Conrad,* 110 Ohio St.3d 42, 43, 2006–Ohio–3561, 850 N.E.2d 683, ¶ 9. "'Abuse of discretion' suggests unreasonableness, arbitrariness, or unconscionability. Without those elements, it is not the role of [the] court to substitute its judgment for that of the trial court." *Id.*

**{¶18}** Evid.R. 702 states that a witness may testify as an expert if all of the following factors apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

Evid.R. 702.

{¶19} It is undisputed that division (A) of Evid.R. 702 is met; expert testimony is needed to discuss spousal support and division of Richard's 401(K). Thus, our focus is on divisions (B) and (C) and whether Sackett's opinions regarding spousal support and the 401(K) met the foundational requirements in those divisions.

401(K)

{¶20} Sackett stated that as a "direct and proximate result of Mr. Amato's breach of his duty to Ms. Bangor and to a reasonable degree of professional certainty," it is his "opinion that Mr. Amato was negligent in his representation of Christine Bangor and damages resulted therefrom" for failing "to obtain a reasonable and appropriate percentage of Christine Bangor's Husband's 401(K)." He specifically found fault with the fact that the records for the 401(K) came directly from Richard, not from Richard's employer or the plan's record keeper. He also found fault with the fact that not all of the statements were provided to the pension evaluator; there were some gaps. Sackett opined that these problems should have caused Amato to get his own independent pension evaluation. Sackett then concluded that a fair and reasonable distribution of the 401(K) would have been half of the entire $600,369, which would amount to $300,184.50.

{¶21} Sackett's opinion on the 401(K) can be divided into two parts. The first opinion is about the actual pension evaluation that was done. He claims it was not properly done and that the evaluation should have concluded that she was entitled to half of the entire pension. The second opinion is what Amato should have done when he received a copy of the pension evaluation, which according to Sackett was to get his own independent evaluation.

{¶22} In regards to the first portion of the opinion, that the pension evaluation was done incorrectly and that Christine should have received half of the entire pension, Sackett lacks the expertise to render such an opinion. Evid.R. 702(B) requires that he have specialized knowledge, skill, experience, training, or education regarding the subject matter of his testimony. Evid.R. 702(B). During his deposition, Sackett stated that he is not a CPA and that he has no expertise in preparing pension evaluations. Sackett Depo. 14, 27-29. This statement alone shows he cannot meet the requirements of Evid.R. 702(B) to offer an opinion on the pension evaluation. That lack of expertise becomes even more glaring when comparing his testimony to that of James C. Coco, Amato's expert.

{¶23} Coco did the original pension evaluation that was used in the divorce action. He is a CPA and since the early 1990s he has done over 2,000 pension evaluations of this type. Coco Depo. 7-8. He testified that he has been recognized as an expert in pension evaluations in every case in which he has testified and his opinion has never been excluded by a court of law. Coco Depo. 45. He further testified that despite which party pays him, he does not see himself as an expert for either party, but rather an expert for the court. Coco Depo. 22. He then explained how the distribution of the 401(K) at issue in this case was computed. Coco Depo. 17-38.

{¶24} He stated that prior to the time of the Bangors' marriage in 1994, Richard already had $200,000 in a 401(K). He explained that that was treated as Richard's separate property and that any contributions made to the 401(K) after the date of marriage were treated as marital property. Coco Depo. 17. He then

explained the process used to compute the interest on the marital and separate property. Coco Depo. 33- 38.

{¶25} Coco testified that typically information regarding the pension comes from the employer or the pension administrator. That said, he testified that it can also come from the employee. He explained that while this is not the normal course of conduct, it is not unusual to deal with the participant for the records rather than the employer or record keeper of the statements. Coco Depo. 19. Coco further indicated that when reviewing the information he received from Richard Bangor, which was what he used to compute the marital and separate property of the 401(K), he did not see any evidence of anything unreliable in the documents. Coco Depo. 83.

{¶26} He also addressed how a loan, which was taken from the pension plan during the marriage, affected the marital and separate property. The loan that was taken from the 401(K) during the marriage ($50,000) was deducted from the marital portion. The marital portion at the time of the loan was not enough to cover the loan. Therefore, the rest of the loan was taken from the separate property. When the loan was paid back, the repayment ($70,000) was put into the marital portion. Coco Depo. 42-43.

{¶27} He also explained gap issues. A gap in this context would mean there is a statement or statements that are missing that show the gains or losses of the pension. Christine Bangor's arguments at the trial court level and now on appeal focuses on this issue and asserts that it calls into question the computations of the distribution. However, Coco explained that this is not uncommon to have gaps and that there is a manner to fill the gaps, which are accepted and reasonable methods. Coco Depo. 34. He stated that the calculation for the gaps was acceptable and reasonable. Coco Depo. 35.

{¶28} In addition to explaining his credentials and how a computation for the distribution of the pension is done, Coco also looked at Sackett's conclusion regarding how the pension should be distributed. As aforementioned, Sackett's opinion was that the pension, in its entirety, should be divided in half. Coco stated that that conclusion contains no analysis and is just a dividing of the balance by two.

Coco Depo. 47. That it is not, in his opinion, an expert calculation of a pension evaluation. Coco Depo. 47.

**{¶29}** This last conclusion highlights another problem with Sackett's opinion regarding the distribution of the pension. In addition to lacking the expertise for pension evaluations pursuant to Evid.R. 702(B), Sackett's opinion regarding the pension evaluation also fails to comply with Evid.R. 702(C).

**{¶30}** In the context of a legal malpractice action, Evid.R. 702(C) requires that a legal expert's opinion be based upon some reliable legal principle or methodology. *Franjesh v. Berg*, 9th Dist. No. 17534, 1996 WL 556899 (Oct. 2, 1996). In *Franjesh*, an expert opined that divorce attorney's representation fell below acceptable community standard because the divorce attorney did not consider premarital military time in the pension evaluation calculations. The appellate court found that that opinion did not meet the foundational requirements of Evid.R. 702(C). That decision was based on the fact that the law is clear on what separate property is and on what constitutes marital property. *Id. See also* R.C. 3105.171(A)(3), (6). Statutorily marital property and separate property have different definitions. R.C. 3105.171(A)(3), (6). Similar to the expert in *Franjesh*, Sackett fails to acknowledge marital property from separate property. Thus, his opinion does not meet the foundational requirements in Evid.R. 702(C).

**{¶31}** Furthermore, Christine Bangor does not appear to make the argument that no portion of this pension is non-marital. This is important to note because as long as there is a portion that is non-marital, Sackett's failure to consider that separate property means that his opinion on the distribution of the 401(K) does not meet Evid.R. 702(C) requirements.

**{¶32}** However, assuming arguendo, her arguments could be construed as asserting the position that no portion of the 401(K) was separate property, she provides nothing beyond her own self-serving statement to support that claim. Self-serving affidavits, without corroboration, generally will not be sufficient to demonstrate material issues of fact. *See Durick v. eBay, Inc.*, 7th Dist. No. 05MA198, 2006-Ohio-4861, ¶ 29; *Pinchot v. Mahoning Cty. Sheriff's Dept.,* 7th Dist.

No. 05MA48, 2005-Ohio-6593 ¶ 26. Amato, on the other hand, offers testimony from Coco that he was provided with documentation that showed the 401(K) was started prior to the marriage. Separate property by statute is defined as property acquired prior to marriage. R.C. 3105.171(A)(6)(a)(ii). Thus, for those reasons, Sackett is unqualified to offer an opinion on whether the pension evaluation was correctly performed and how the pension should be divided.

{¶33} That said, as explained above, Sackett's opinion was not confined to whether the pension evaluation was done correctly or how it should have been divided. Sackett also offered on how Amato was required to proceed with the evaluation that came back from pension evaluators. Sackett claimed that the gap issues, the fact that there was a loan taken out on the pension during the marriage and the fact that the documentation for the pension evaluation was supplied by Richard should have caused Amato to question the evaluation's reliability. Thus, Sackett opined that Amato should have gotten an independent evaluation and made sure that there were no gaps and that none of the information came from Richard's employer or the administrator of the pension plan, not from Richard.

{¶34} This argument, however, does not help Christine. While Sackett most likely has the expertise to offer this opinion, this opinion would not help her survive summary judgment. Christine's malpractice claim utilizes the case-within-the-case doctrine and thus, requires her to show that she would have gotten a better outcome if she had gone to trial. *Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.*, 119 Ohio St.3d 209, 212, 2008-Ohio-3833, 893 N.E.2d 173, ¶ 17-19 ("It is insufficient for the plaintiff to present simply 'some evidence of the merits of the underlying claim,' rather 'the plaintiff must establish that he would have been successful in the underlying matter.'"). This assertion, in the context of the pension, means she would have received more of it. In order to prove this, she has to offer an expert on the pension. Sackett could potentially offer an opinion on how a reasonable attorney was required to proceed after getting an evaluation like the one received in this instance. However, he is not qualified to offer an opinion on the proper distribution of the pension because he is not a pension evaluator.

Furthermore, the record is devoid of any indication, beyond mere conjecture, indicating that the pension distribution that was calculated was inaccurate. Assuming that Amato should have done more when the evaluation came back, such as getting a second evaluation, if that second evaluation came back the same as the first evaluation she would not be entitled to damages because she would have failed to show that the outcome if she had gone to trial would have been more favorable to her. There is no evidence in this record to show that a second pension evaluation would have been any different. Therefore, even if Sackett's opinion that Amato should have had an independent evaluation done was admissible, its exclusion amounted to harmless error because it would not have helped Christine survive summary judgment.

**{¶35}** Considering all of the above, we cannot find that the trial court abused its discretion in excluding Sackett's testimony on the 401(K). That portion of the trial court's decision is affirmed.

<u>Spousal Support</u>

**{¶36}** Sackett also offered an opinion on the amount of spousal support. The agreement between Richard and Christine was that she would receive $1,200 per month for 59 months. Sackett claimed that a reasonable and appropriate spousal support order would be $4,000 per month for 68 months.

**{¶37}** In excluding Sackett's testimony, the trial court stated:

In Attorney Sackett's same report, which is attached to Plaintiff's filing of November 15, 2013, stated that the Plaintiff should have received spousal support of $4,000 a month for 68 months, rather than the settlement amount of $76,000. Sackett fails to account for the significant marital indebtedness which the Plaintiff's ex-husband assumed pursuant to the terms of the Court-approved Separation Agreement. Even a very cursory review of the Agreement shows about $200,000 of debt being assumed by the Plaintiff's former husband. In sworn statement Attorney James Hartford, counsel for the Plaintiff's former husband, said the amount of indebtedness assumed by his

client was even more. He said, "I think close to a quarter million dollars in debt."

The marital indebtedness is clearly a factor which a Court is to consider in making an award. However, Mr. Sackett admits in his deposition that the amount of indebtedness was not contained in his expert report.

In summary, the Court finds Mr. Sacketts' [sic] expert credentials lacking as a matter of law pursuant to Evid.R. 702. He has never testified as an expert before. While that is not dispositive of this issue, he is admittedly not a pension evaluator and he had failed to address in his report the major element of marital indebtedness in opining on what he feels should have been the spousal support award for the Plaintiff. The Court finds that Sackett does not have "specialized knowledge" as the evidence rule requires and excludes his testimony as an expert.

01/22/14 J.E.

**{¶38}** To the extent that the above determination finds that Sackett lacks the knowledge to render an opinion on spousal support based on Evid.R. 702(B), we disagree. As previously stated, Sackett has been a practicing attorney for many years and his primary work is in the divorce area. Those facts support the position that he has the credentials to offer an expert opinion on what a typical and reasonable spousal support award would be when considering the factors in R.C. 3105.18(C), which is the statute that governs spousal support. Thus, the requirements in Evid.R. 702(B) are met.

**{¶39}** That said, the trial court's reasoning shows that it was also excluding Sackett's opinion on spousal support because it did not comply with Evid.R. 702(C), i.e. it was not based on a reliable legal principle or methodology. Sackett's opinion on what reasonable spousal support would have been had the divorce proceeded to trial and judgment before the court was based on the length of the marriage, the incomes of Christine and Richard, and the decision from our court in *Lepowsky v. Lepowsky*, 7th Dist. No. 08CO10, 2010-Ohio-1544 (*Lepowsky III*). Sackett did not

consider the assumption of the marital debt. The trial court's decision to exclude Sackett's opinion was based on the failure to consider that factor. Thus, the trial court was finding that Sackett's opinion was not based on a reliable legal principle or methodology because that opinion failed to account for all the appropriate factors for determining the amount and duration of spousal support.

**{¶40}** The factors for determining spousal support are set forth in R.C. 3105.18(C). That section lists a myriad of factors and one such factor is assumption of the marital debt. R.C. 3105.18(C)(1)(i) (relative assets and liabilities of the parties). Case law provides that it is a weighing process and that trial courts enjoy broad discretion in determining the amount and duration of spousal support. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990); *Cherry v. Cherry*, 66 Ohio St.2d 348; 421 N.E.2d 1293 (1981).

**{¶41}** The record shows that Richard did assume marital debt. Christine admitted that fact. She testified that at the time of the divorce, she and Richard owed $107,000 on the house. Christine Depo. 130. This was roughly the amount the house was worth and Richard assumed that debt. She also admitted that Richard assumed the medical debt, though she claims much of the medical debt was already paid off. The only debt Christine admittedly left the marriage with was her premarital student loan and a $10,000 car loan, which she acquired during the divorce proceedings and without court approval. Likewise, Attorney Hartford, Richard Bangor's attorney, testified that during the settlement negotiations and reviewing what had been done, the magistrate made the statement, "Boy, this guy is eating a bunch of debt." Hartford Depo. 84. Hartford indicated that the marital debt was close to a quarter million dollars. Hartford Depo. 69.

**{¶42}** Considering R.C. 3105.18(C) and that it is a weighing process, an expert offering an opinion on spousal support should have at least considered the debt that Christine admitted Richard assumed when determining the appropriate spousal support amount or offered an explanation as to why it was not considered. Neither was done here; the report does not mention marital debt even though Sackett testified that he "reviewed the debt assumption." Sackett Depo. 69-70.

**{¶43}** Failing to consider all of the factors or failing to indicate why such factor is not considered tends to indicate that the opinion was not based on a reliable legal methodology. Under Evid.R. 705, an "expert may testify in terms of opinion or inference and give his reasons therefor after disclosure of the underlying facts or data." An expert may not give an opinion on the "'ultimate issue' if that opinion is essentially a bare conclusion lacking in supporting rationale." *Boley v. Kennedy*, 3d Dist. No. 3-02-35, 2003-Ohio-1663, ¶ 18, quoting *Gannett v. Booher*, 12 Ohio App.3d 49, 52, 465 N.E.2d 1326 (6th Dist.1983). *See also Schottenstein, Zox & Dunn, L.P.A. v. C.J. Mahan Constr. Co., L.L.C.*, 10th Dist. No. 08AP-851, 2009-Ohio- 3616, ¶ 31.

**{¶44}** Furthermore, the fact that Christine disputes the amount of debt Richard assumed does not help her position because she offers no support for the allegation. As stated above Christine admits that Richard did assume debt, however, she claims that a large portion of that was paid off prior to the divorce, i.e. it was according to her "old" debt. Christine Depo. 192. In her affidavit, attached to her motion for partial summary judgment, she states that the marital debt her ex-husband alleged was fabricated and inflated as many were outdated, paid off or significantly lower. 11/11/13 Christine Affidavit. However, beyond mere allegation, she offers no evidence that it is true. "Generally, a party's unsupported and self-serving assertions, offered by way of affidavit, standing alone and without corroborating materials under Civ.R. 56, will not be sufficient to demonstrate material issues of fact." *Davis v. Cleveland,* 8th Dist. No. 83665, 2004–Ohio–6621, ¶ 23, quoting *Bell v. Beightler,* 10th Dist. No. 02AP–569, 2003–Ohio–88, ¶ 33. *See also Durick v. eBay, Inc.*, 7th Dist. No. 05MA198, 2006-Ohio-4861, ¶ 29. "Otherwise, a party could avoid summary judgment under all circumstances solely by simply submitting such a self-serving affidavit containing nothing more than bare contradictions of the evidence offered by the moving party." *Davis*; *Bell*. *See also Pinchot v. Mahoning Cty. Sheriff's Dept.,* 7th Dist. No. 05MA48, 2005-Ohio-6593 ¶ 26.

**{¶45}** Her allegations could have been supported by documentation; calling the place to get documentation of when the debt was paid off could have been done.

If a large amount of the debt had been paid off, potentially her malpractice claim might survive. She might be able to show she would have received a larger spousal support award had she gone to trial. That said, merely stating something is "old" does not mean it was paid off. Clearly, her premarital student loan is old, but she does not claim it is paid off.

**{¶46}** Thus, alternatively even if the expert testimony was not excluded, she did not satisfy her burden during summary judgment proceedings to survive summary judgment. As explained above, she was required to show that she would have received a larger spousal support had she gone to trial. In order to show the result, i.e. the spousal support award, would have been better, she would have had to show that the marital debt that Richard assumed was not as extensive as was set forth in the separation agreement.

**{¶47}** Therefore, Sackett should have considered the marital debt that Richard assumed or to explain why it was not considered provided a basis for the trial court to exclude his testimony. The trial court did not abuse its discretion in excluding the opinion based on the failure to consider the assumption of the marital debt or to explain why it was not considered.

**{¶48}** It is noted that Sackett also relied on *Lepowsky III* and asserted that it demonstrates that Christine was entitled to a larger spousal support award for a longer duration. In *Lepowsky III,* we modified the spousal support to $3,000 per month for an indefinite duration. *Lepowsky III*, 7th Dist. No. 08CO10, 2010-Ohio-1544. The original spousal support order was $1,000 per month for 82 months. In *Lepowsky III* we modified the award due to the unnecessarily long and tortured procedural past of the case. *Id.* at ¶ 3. In *Lepowsky*, the duration was a 36 year marriage and the wife was a homemaker who had little education beyond high school. The wife, in *Lepowsky,* when entering the workforce only worked for minimum wage, while the husband made roughly $101,000 a year. The *Lepowsky* parties did not acquire the marital debt that was acquired in this case. In the case at hand, the length of the marriage was 17 years. Christine was not only a homemaker, but she worked outside the home. Despite having a degree from the Pittsburgh Art

Institute for interior design, Christine did not utilize that degree and instead worked part time as a barmaid and/or server making roughly $10 an hour. At the time of the divorce, Christine and Richard's youngest child was in her final year of high school. The tax return in the record for Richard Bangor indicated that he earned between approximately $95,000 and $175,000 a year since 2001. As stated above, the marital debt in this case was at least $200,000.

**{¶49}** The amount of debt and the fact that Christine has a degree that gives her the ability to earn more than minimum wage arguably makes this case distinguishable from *Lepowsky III*. As we stated in *Lepowsky III*, "'[e]qualization of income is not a factor that must be considered or a goal in divorce cases,' we also recognized that, 'the award must nonetheless be equitable in light of the factors in each case.' 'To be equitable, the parties should, if feasible, enjoy a standard of living comparable to that enjoyed during the marriage, adjusted by the factors set forth in R.C. 3105.18.'" *Lepowsky III* at ¶ 14. Thus, *Lepowsky III* does not support the conclusion that Christine would have received a larger spousal support award had she gone to trial.

**{¶50}** In conclusion, considering all of the above, the trial court did not abuse its discretion in excluding Sackett's opinion regarding spousal support. Although the trial court should not have stated that Sackett lacks the credentials for having an expert opinion on spousal support, it was within the trial court's discretion to find that Sackett's opinion does not meet the foundational requirements of Evid.R. 702(C).

Second Assignment of Error

**{¶51}** "The trial court erred in dismissing Ms. Bangor's fraud claim."

**{¶52}** Amato moved to dismiss Christine's fraud claim because it failed to state a claim upon which relief could be granted. The trial court granted the motion.

**{¶53}** A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted is a procedural motion that tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.,* 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992). In order to dismiss a claim for failure to state a claim upon which relief can be granted, the court must find beyond doubt that the

non-movant can prove no set of facts warranting relief after it presumes all factual allegations in the claim are true, and construes all reasonable inferences in appellant's favor. *State ex rel. Seikbert v. Wilkinson,* 69 Ohio St.3d 489, 490, 633 N.E.2d 1128 (1994). Therefore, the standard of review for a Civ.R. 12(B)(6) motion to dismiss is de novo; the appellate court is required to independently review the claim to determine if the dismissal was appropriate. *Ferreri v. Plain Dealer Publishing Co.,* 142 Ohio App.3d 629, 639, 756 N.E.2d 712 (8th Dist.2001).

**{¶54}** The elements of a fraudulent concealment claim are: "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Gaines v. Preterm–Cleveland, Inc.*, 33 Ohio St.3d 54, 55, 514 N.E.2d 709 (1987).

**{¶55}** The claims in the complaint regarding the fraud are as follows. Christine asserted that Amato failed to disclose that Attorney Hartford, her ex-husband's divorce attorney, had previously represented Amato at least four times, one of which was for his own divorce in 2009. 3/11/13 Amended Complaint Paragraph 13. She claimed that Amato "owed a duty to me, as his client to disclose the nature of his extensive relationship and prior dealings with my ex-husband's attorney." 3/11/13 Amended Complaint Paragraph 14. She asserted that Amato's "extensive relationship and prior dealings" with Attorney Hartford, (Richard's divorce attorney) "was a material fact which affected his loyalty and independent judgment in his representation of me in the underlying divorce proceeding." 3/11/13 Amended Complaint Paragraph 15. Christine claimed that Amato "concealed" the existence of the prior relationship "with the intent of misleading me to rely upon his concealment." 3/11/13 Amended Complaint Paragraph 16. She asserted that she was justified in relying on the ongoing concealment and that ongoing concealment was "committed" for Amato's "own personal gain." 3/11/13 Amended Complaint Paragraph 17 and 18.

She claimed economic damages, that the concealment rose to the level of malice, and that she has suffered mentally and emotionally from the "ongoing concealment." 3/11/13 Amended Complaint Paragraph 19, 20 and 21.

{¶56} A can be seen, while the complaint does indicate that Amato allegedly had a duty to disclose his prior relationship with Attorney Hartford, the complaint does not indicate the legal authority for this alleged duty to disclose. In response to the Civ.R. 12(B)(6) motion, Christine claims that basis for the duty to disclose is the Professional Rules of Conduct. She cites to both the conflict of interest rule, Rule 1.7, and the misconduct rule, Rule 8.4, in the professional code.

{¶57} Amato counters by claiming that Ohio Rules of Professional Conduct are not a basis for liability and the rules do not require an attorney to disclose whether another attorney has represented him in his own legal proceedings.

{¶58} We agree with Amato and affirm the trial court's dismissal of the fraud claim. In reaching this conclusion, we note that it is not the purpose of the Professional Rules to create a private cause of action. The Ohio Supreme Court has explained:

> The purpose of disciplinary actions is to protect the public interest and to ensure that members of the bar are competent to practice a profession imbued with the public trust. *Disciplinary Counsel v. Trumbo* (1996), 76 Ohio St.3d 369, 667 N.E.2d 1186. These interests are different from the purposes underlying tort law, which provides a means of redress to individuals for damages suffered as a result of tortious conduct. Accordingly, violation of the Disciplinary Rules does not, in itself, create a private cause of action. *Am. Express Travel Related Servs. Co. v. Mandilakis* (1996), 111 Ohio App.3d 160, 675 N.E.2d 1279.

*Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 178, 707 N.E.2d 853 (1999).

{¶59} Furthermore, the Preamble to the Professional Rules of Conduct states, "Violation of a rule should not itself give rise to a cause of action against a lawyer nor

should it create any presumption in such a case that a legal duty has been breached." Prof.Cond.R. Preamble at [20]. Therefore, the rules alone cannot give rise to a cause of action against an attorney. *Cargould v. Manning*, 10th Dist. No. 09AP-194, 2009-Ohio-5853, ¶ 10.

{¶60} However, even if a violation of the professional rules alone do provide a basis for civil liability against an attorney, the facts as pled in this case do not show that there was a duty to disclose. The Professional Rules referenced by Christine are Rules 1.7 and 8.4, which respectively state:

> (a) A lawyer's acceptance or continuation of representation of a client creates a conflict of interest if either of the following applies:
>
> * * *
>
> (2) there is a *substantial* risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by the lawyer's own personal interest.

(Emphasis in Original). Prof.Cond.R. 1.7(a)(2).

> It is professional misconduct for a lawyer to do any of the following:
>
> * * *
>
> (c) engage in conduct involving dishonesty, *fraud*, deceit or misrepresentation;
>
> (d) engage in conduct that is prejudicial to the administration of justice.

(Emphasis in Original). Prof.Cond.R. 8.4(c) and (d).

{¶61} At the outset, we note that there is no case law specific to the situation before us. The Ohio Supreme Court has not reviewed this rule to determine whether an attorney who failed to disclose the prior representation by opposing counsel violated the disciplinary rule.

**{¶62}** Thus, without case law for guidance our review is confined to the language of the professional rules and the requirements for pleading fraud claims. Pursuant to Civ.R. 9(C) fraud is to be pled with particularity. Here, the facts as pled, do not indicate that there was a duty to disclose under Rule 1.7 or Rule 8.4. The pleadings do not show that Amato nor Hartford have a personal interest in the Bangor divorce. Amato was paid a flat fee and Hartford was paid an hourly fee. Hartford may have gained personal information about Amato during his divorce proceedings but nothing in the pleadings indicate that this was of any use during the Bangor divorce. Thus, where is the potential conflict of interest that either attorney may have had that adversely impacted Christine? Or in other words, the pleadings do not indicate what interest was disclosed in the prior relationship that could possibly affect Christine in this case. Since there is no legal authority that there was a duty to disclose under the facts as pled, the trial court was correct in dismissing the fraud claim. Consequently, this assignment of error lacks merit.

### Conclusion

**{¶63}** For the reasons stated above, both assignments of error are overruled. The judgments of the trial court are hereby affirmed.


Donofrio, J., concurs.
Waite, J., concurs.